# Terry et al. v. Terry

(Decided June 5, 1936.)

626

E. C. HYDEN for appellants.

G. C. ALLEN for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE CLAY— Reversing.

Fanny Terry and Miles Terry were married on September 9, 1910, and lived together until the death of Miles Terry, which occurred on March 2, 1934. Miles Terry left a will, dated September 10, 1910, but which he executed in the presence of two witnesses on September 3, 1910. By this will he devised all of his personal proper-

ty to his legal heirs, except his two grandsons to whom he gave $1 each, and appointed his two sons, Charles Terry and I. L. Terry, executors and directed that they be allowed out of his personal property $25 each for their services. By a codicil, executed June 12, 1928, he directed that the provisions of his will for the disposition of his personal property should remain as therein set out, and referred to the fact that he had made deeds dividing his real estate among his children and grandchildren, and that the deeds contained certain reservations and conditions which he reaffirmed with certain exceptions. The codicil also referred to the fact that there was an error in the will as to the time he subscribed his name and the time the attesting witnesses subscribed their names, and added that he subscribed his name and they subscribed their names all at the same time.

The will and codicil were probated in the Breathitt county court on March 27, 1934.

On January 1, 1935, Fanny Terry, the widow, renounced the will by a writing which she signed and acknowledged before the clerk of the Breathitt county court, and filed in his office.

On January 12, 1935, Fanny Terry brought this suit in equity against I. L. Terry and Charles Terry, executors of her husband, to recover her dower and distributable share in his estate. She alleged that the personal estate of the decedent exceeded $5,000, after the payment of his funeral expenses and debts. Summons dated January 12, 1934, was served on the defendants, and they moved to quash on the ground that the summons was issued prior to January 12, 1935, the day the action was filed. The court permitted the process to be amended, and overruled the motion to quash. Thereupon the defendants filed an answer in three paragraphs. The first paragraph contained a denial of certain allegations in the petition. In paragraph 2 they pleaded an antenuptial agreement by which Mrs. Terry and her husband each waived and relinquished his or her marital rights in the property of the other, and alleged that the agreement was executed. In paragraph 3 they pleaded that the contract set out in paragraph 2 was a binding contract and fully executed on the part of the husband, and that the alleged writing by which Mrs. Terry renounced the provisions of her husband's will was a nul-

lity. Later on the defendants filed an amended answer pleading that Miles Terry had on deposit at the time of his death the sum of $3,931.77 and no more; that said sum was on deposit to the credit of the executors, except the sum of $50.13 paid for burial expenses; that certain articles of personal property were sold at auction for $599.15; and that part of the money had been collected.

Plaintiff's demurrer to the answer was sustained. After the court had announced its decision and approved the written judgment prepared by counsel for plaintiff, defendants offered to file a second amended answer pleading that Miles Terry at the time of his death was indebted to I. L. Terry in the sum of $1,300, and that the said sum should be paid out of the estate before same was distributed to the widow, that said Fanny Terry received out of the estate various articles of personal property which were not appraised and included in the sale bill, and that she be required to account for same as part of the $750 attempted to be adjudged to her. They further pleaded that no claims had been filed against the estate on account of the fact that same had been in litigation and defendants were entitled to have the cause referred to the master commissioner to hear proof of claims and make a settlement of the estate. The court refused to permit the amended answer to be filed, but made same a part of the record. The court found that Miles Terry at the time of his death had on deposit in the First National Bank of Jackson $3,931.77, and had on hand other personal property of the value of $599.15. The executors were allowed a credit of $50.13 for burial expenses, and the further sum of $224.03 for administering the estate. After allowing these credits, the court found the balance to be $4,256.79, of which it allowed Mrs. Terry $750, and one-half of the balance, amounting to $1,753.39. The executors appeal.

At the outset we are met by the contention that the court was without authority to permit the date of the summons to be changed after it was executed, and thereby giving it an effect different from the copy served on the defendant. The suit was filed January 12, 1935. Being accustomed to writing 1934, the clerk inadvertently dated the summons January 12, 1934, instead of

January 12, 1935, thus making it appear that the summons was issued a year before the suit was filed. Such a palpable and harmless mistake ought not to stand in the way of justice, and the court followed not only the law, but the dictates of common sense in permitting the correction to be made.

The main contention of appellants is that the court erred in sustaining the demurrer to the answer. The answer pleads an antenuptial contract by which Mrs. Terry and her husband each released the right to share in the other's estate. It not being alleged that the contract was in writing, the presumption is that it was oral, and the defense of the statute of frauds may be presented by demurrer. Boone v. Coe, 153 Ky. 233, 154 S. W. 900, 51 L. R. A. (N. S.) 907; Todd v. Finley, 166 Ky. 546, 179 S. W. 455. Our statute of frauds declares that no action shall be brought to charge any person upon any agreement made in consideration of marriage, except mutual promises to marry, unless the agreement or some memorandum or note thereof be in writing and signed by the party to be charged therewith, or by his authorized agent. Kentucky Statutes, sec. 470, subd. 5. We have applied the statute in numerous cases. In Potts v. Merrit, 14 B. Mon. 406, an oral antenuptial agreement that the wife should retain title to her slaves, and should have the power to control and dispose of them after marriage, was held within the statute. In Mallory's Adm'r v. Mallory's Adm'r, 92 Ky. 316, 17 S. W. 737, 13 Ky. Law Rep. 579, we applied the same rule to an oral antenuptial contract stipulating that neither party should have any interest in the property of the other by reason of the marriage. In Wesley v. Wesley, 181 Ky. 135, 204 S W. 165, an oral antenuptial agreement to give the wife a certain sum of money in consideration of marriage was held unenforceable. In Glazebrook v. Glazebrook's Ex'r; 227 Ky. 628, 13 S. W. (2d) 776, a parol antenuptial agreement whereby each of the parties renounced all interest in the other's estate as survivor, and retained control of his or her separate estate, was held unenforceable as an agreement made in consideration of marriage. Indeed, any promise for which the whole consideration or part of the consideration is either marriage or a promise of marriage is within the statute except mutual promises of two persons that are exclusively engagements to marry each other. Stevens v.

Niblack's Adm'r, 256 Ky. 255, 75 S. W. (2d) 770; Restatement of the Law of Contracts, sec. 192. It follows that the contract relied on presented no defense, unless the other facts pleaded are sufficient to take the case out of the statute. In brief, those facts are that, in pursuance of the oral antenuptial agreement, by which each of the parties should waive and relinquish his or her rights in the property of the other, the wife, prior to the marriage, conveyed all of her property to her two children, and the conveyances were agreed to and acquiesced in by the husband. The agreement on his part was in consideration of the wife's agreement not to claim any share or portion of his estate, and he thereby released his curtesy and homestead rights in her property and she put it entirely out of his power to claim such rights. Thereafter the parties during their entire married life, and up to the death of the husband, held the property in severalty, free from the claims of each other, and each sold or disposed of his or her property as and when they desired, and converted the proceeds to his or her use. During the lifetime of the husband, the wife never repossessed herself of the title to any of said real estate, and the husband never at any time claimed any share or interest therein. The consideration for the agreement by the wife to waive and relinquish her dowable and distributable share in the estate of her husband was fully obtained by her and her children, and was used and enjoyed by them throughout the marriage relation. The facts pleaded do not show a full execution of the contract. The most that can be said is that the husband permitted his future wife to convey away her real estate and thereby deprived himself of his curtesy right in the event he survived her. Thus there was only a part performance of the contract as to the real estate belonging to the parties, and no performance whatever, in so far as the personal estate of the parties was concerned. Though a different rule prevails in some jurisdictions, the rule in this state is that, with the exception of contracts not to be performed in a year, part performance will not take the case out of the statute, though a party may have equitable rights which he may enforce. Beckett-Iseman Oil Co. v. Backer, 165 Ky. 818, 178 S. W. 1084; Dant v. Head, 90 Ky. 255, 13 S. W. 1073, 12 Ky. Law Rep. 153, 29 Am. St. Rep. 369; Boone v. Coe, supra; Maloney v. Maloney, 258 Ky. 567, 80 S. W. (2d) 611.

Nor is there any merit in the contention that in the circumstances here presented the contract, though within the statute of frauds, may be relied on by way of defense. All that that means is that the contract itself may for the purpose of defense be used as a shield to protect the defendant against unconscientious demands and claims growing out of the contract. 25 R. C. L., sec. 345, p. 702. In short, the statute will not operate so as to permit the party who refuses to carry out his old contract to be enriched at the expense of the other. Grainger v. Jenkins, 156 Ky. 257, 160 S. W. 926, L. R. A. 1915 E, 404. With the exception of this limitation, contracts which are within the statute of frauds can no more be made the basis of a defense than the subject of an original action, if the result is an indirect enforcement of the contract. 25 R. C. L. sec. 344, p. 701. Here the husband did not pay out or part with anything of value susceptible of being returned. All that he did was to surrender his curtesy right in his wife's real estate, which he might or might not enjoy, and did not live to enjoy, and which in the very nature of things cannot be returned and cannot operate to deprive the wife of the right to rely on the statute.

The further point is made that, since the enactment of section 2128, Kentucky Statutes, the wife may contract with her husband and may not renounce his will in violation of such contract, in the absence of fraud or deceit in its procurement, a situation not here presented. Though the rule may be conceded, it has no application to a case where, as here, the contract is unenforceable. In such circumstances, there is nothing to prevent the wife from renouncing the will.

Another ground urged for reversal is that the court erred in not permitting the filing of the amended answer pleading that the decedent was indebted to one of the executors, and asking that the cause be referred to the master commissioner to hear proof of claims, and to settle the estate. The ground on which the amendment was rejected was that the amendment was not tendered until after the court had announced its decision and approved the written judgment. The original answer presented a defense which, if it had been sustained, would have defeated Mrs. Terry's entire claim. Until that question was decided, it was not necessary to go into

the facts bearing on the amount of her recovery. She sued for her exemptions and her distributable share in the estate. In the very nature of things, this could not be determined until the amount of outstanding claims had been ascertained. According to the amended answer, the estate was indebted to one of the executors in the sum of $1,300, and appellant herself had received certain articles of personal property for which she had not accounted. There was no unreasonable delay in tendering the amendment, and, in view of the entire situation, we think it was an abuse of discretion not to permit the amendment to be filed, to the end that the amount due appellant might be definitely ascertained.

Judgment reversed and cause remanded with directions to permit the amendment to be filed, and for further proceedings not inconsistent with this opinion.