**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 07 2013, 5:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**NANCY A. MCCASLIN**
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE INDIANA
DEPARTMENT OF CHILD SERVICES:

**SERGIO A. LOPEZ**
DCS Local Office in Elkhart County
Elkhart, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of J.M., Minor Child, and J.M., and Z.W., <br><br> Appellants-Respondents, <br><br> vs. <br><br> INDIANA DEPARTMENT OF CHILD SERVICES, <br><br> Appellee-Petitioner. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 20A03-1301-JT-19 |

APPEAL FROM THE ELKHART CIRCUIT COURT
The Honorable Terry C. Shewmaker, Judge
The Honorable Deborah Domine, Magistrate
Cause No. 20C01-1206-JT-18

**August 7, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

J.M. ("Mother") and Z.W. ("Father"), the parents of J.M., appeal the involuntary termination of their parental rights, challenging the sufficiency of the evidence supporting the trial court's termination order.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother and Father are the parents of J.M., who was born in November 2009. On February 22, 2011, the Indiana Department of Child Services ("DCS") received a report that Mother attempted suicide by crashing her vehicle at a high rate of speed. J.M. was in the car. The report indicated that Mother was diagnosed with schizophrenia and other mental health issues, and had failed to take medication as prescribed for her mental health. As a result of Mother's suicide attempt, Mother was hospitalized for a day. While she was hospitalized, she attempted to commit suicide by hanging herself. The report also indicated that Mother was facing charges for theft and would be incarcerated on those charges upon her release. The report further noted that Mother had a history of addiction to crack cocaine, was staying at a homeless shelter with J.M., and did not have a stable home.

DCS removed J.M. from Mother's care and filed a petition alleging J.M. was a Child in Need of Services. On June 4, 2012, DCS filed its petition for involuntary termination of parental rights. Following an evidentiary hearing, the court issued its ruling terminating the parental rights of both Mother and Father. Mother and Father now appeal.

2

**DISCUSSION AND DECISION**

Mother and Father argue that the evidence does not support the conclusion that their parental rights should have been terminated. We begin our review by acknowledging that this court has long had a highly deferential standard of review in cases concerning the termination of parental rights. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). When reviewing a termination of parental rights case, we will not reweigh the evidence or judge the credibility of the witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* Moreover, in deference to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999).

Here, in terminating the parental rights of Mother and Father, the trial court entered specific findings and conclusions.[1] When a trial court's judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and

---

[1] We commend the trial court for the clarity and thoroughness of its factual findings which have significantly assisted appellate review.

3

inferences support the trial court's decision, then we must affirm. *L.S.*, 717 N.E.2d at 208.

The Fourteenth Amendment to the United States Constitution protects the traditional liberty interest of parents to establish a home and raise their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *see also In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. These parental interests, however, are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *M.B.*, 666 N.E.2d at 76. In addition, although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *K.S.*, 750 N.E.2d at 836. The purpose of terminating parental rights is not to punish parents but to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004).

Before an involuntary termination of parental rights may occur, the State is required to allege and prove, in pertinent part, the following:

> (B) that one (1) of the following is true:
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
> (C) termination is in the best interests of the child; [and]
> (D) there is a satisfactory plan for the care and treatment of the child.

*See* Ind. Code § 31-35-2-4(b)(2). Moreover, the State's burden of proof in termination of

4

parental rights cases is one of clear and convincing evidence. Ind. Code § 31-34-12-2; *see also In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009). Clear and convincing evidence need not reveal that the continued custody of the parents is wholly inadequate for the child's very survival. *Bester*, 839 N.E.2d at 148. Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. *Id.*

Mother and Father challenge the sufficiency of the evidence supporting the trial court's findings as to subsections (b)(2)(B), (b)(2)(C), and (b)(2)(D) of the termination statute cited above. *See* Ind. Code § 31-35-2-4(b)(2). Each challenge will be discussed in turn.

Under subsection (b)(2)(B), the trial court found that both (i) and (ii) were true. However, because the statute only requires proof of one, we will consider only whether clear and convincing evidence supported the trial court's conclusion that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied. *See* Ind. Code § 31-35-2-4(b)(2)(B)(i). In making its determination, the trial court does not need to wait to terminate parental rights until a child is irreversibly influenced by a deficient lifestyle so that his physical, mental, and social growth is permanently impaired. *In re E.S.*, 762 N.E.2d 1287, 1290 (Ind. Ct. App. 2002). To determine whether there is a reasonable probability that the conditions which resulted in the removal of the child will not be remedied, the trial court should judge a parent's fitness to care for his child at the time of the termination hearing, taking into consideration evidence of changed conditions. *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct.

5

App. 2001).

With respect to Mother, the court noted Mother's attempted suicide by driving her car in the wrong direction at a high rate of speed while J.M. was a passenger, her eighteen months of noncompliance with the mental health services offered through the CHINS case, and eighteen months of cycling between engaging in treatment, relapse, and multiple suicide attempts. Although noting Mother's commendable behavior in the preceding two months, the court also observed that Mother was still homeless at the time of the court's termination decision and that there were long delays in getting Mother into the services she required because she often could not be located. Consistent with our standard of review, the evidence supported the trial court's conclusion that the conditions leading to J.M.'s removal from Mother's care were not remedied.

As to Father, the trial court noted that Father lacks a bond with J.M. The court observed that Father had seen J.M. only three times in J.M.'s three years of life and, importantly, that Father had not seen J.M. for more than twenty months since the CHINS case began. In making its termination decision, the court further observed that Father has a history of domestic violence, giving rise to his extended period of incarceration, and that there was no evidence, outside of Father's testimony, to substantiate that Father had participated in any services to address the violence that resulted in his incarceration. The court noted that Father was unable to care for J.M. at the time J.M. was taken into custody and that, at the time of its termination decision, Father was still incarcerated and unable to care for J.M. The court concluded that the conditions that resulted in the removal of J.M. from the home had not been remedied and the evidence was sufficient to

6

support that conclusion.

Mother and Father next contend that, under subsection (b)(2)(C), the evidence was not sufficient to conclude that termination of their parental rights is in the best interests of J.M. *See* Ind. Code § 31-35-2-4(b)(2)(C). In determining what is in a child's best interests, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). We have previously held that the recommendations of the case manager and court-appointed advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.* A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of parental rights is in the best interests of the child. *Lang v. Starke Cnty. Office of Family & Children*, 861 N.E.2d 366, 373 (Ind. Ct. App. 2007).

In addition to the findings set forth previously, establishing that the conditions resulting in J.M.'s removal had not be remedied, the trial court found that J.M.'s DCS case manager and the court-appointed special advocate ("CASA") each testified that termination would be in J.M.'s best interests. Mother and Father question the conclusions of the DCS case manager and the CASA, but these arguments appear to be a request for this court to reweigh the evidence, a task we will not undertake on review. *In re C.S.*, 863 N.E.2d 413, 417 (Ind. Ct. App. 2007), *abrogated on other grounds by In re N.E.*, 909 N.E.2d 102, 106 (Ind. 2012). In making its conclusion about J.M.'s best

7

interests, the court observed that "[i]t is undisputed that children require secure, stable, long-term continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty." *Appellant's App.* at 137 (quoting *Baker v. Marion Cnty. Office of Family & Children*, 810 N.E.2d 1035, 1040 (Ind. 2004)). The court then noted the uncertainty in the present matter, pointing to uncertainty as to Mother's prospects of achieving enough stability to care for J.M. and also as to whether Father, upon being released from incarceration, would develop the bond with J.M. necessary to raise a healthy child and would participate in the services necessary to keep J.M. safe. Although Father testified that termination is not in J.M.'s best interests because Father deserved an opportunity to parent J.M., the trial court recognized that, again, termination of parental rights is not to punish the parents, it is to protect the child. *S.P.H.*, 806 N.E.2d at 880. Ultimately, the evidence was sufficient to support the trial court's conclusion that termination was in J.M.'s best interests.

Last, Mother and Father claim that the juvenile court erroneously concluded that DCS had set forth a satisfactory plan for J.M. under (b)(2)(D). *See* Ind. Code § 31-35-2-4(b)(2)(D). Here, the plan was adoption. Indeed, J.M.'s foster parents had indicated that, in the event the parental rights of Mother and Father were terminated, they would take steps to adopt J.M. We have noted that a satisfactory plan "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." *In re D.D.*, 804 N.E.2d at 268. Furthermore, "[a]ttempting to find suitable parents to adopt the chil[d] is clearly a satisfactory plan." *Lang*, 861 N.E.2d at 375. Thus, the court did not commit clear error in concluding that

adoption was a satisfactory plan for J.M.

In sum, we find that the record clearly and convincingly supports the court's order terminating the parental rights of Mother and Father.

Affirmed.

ROBB, C.J., and RILEY, J., concur.