FIRSTMERIT BANK, N.A., APPELLANT, *v.* INKS ET AL., APPELLEES.

[Cite as *FirstMerit Bank, N.A. v. Inks*, **138 Ohio St.3d 384, 2014-Ohio-789.**]

*Statute of frauds—R.C. 1335.06—Foreclosure—Defense—Oral forbearance agreement.*

(Nos. 2013-0091 and 2013-0203—Submitted December 10, 2013—Decided March 4, 2014.)

CERTIFIED by and APPEAL from the Court of Appeals for Summit County, Nos. 25980 and 26182, 2012-Ohio-5155.

_____

**O'DONNELL, J.**

**{¶ 1}** We accepted a conflict certified to us by the Ninth District Court of Appeals on the following question: "Whether Section 1335.05 of the Ohio Revised Code prohibits a party from raising as a defense that the parties to a contract involving an interest in land orally agreed to modify the terms of their agreement." *FirstMerit Bank v. Inks*, 135 Ohio St.3d 1410, 2013-Ohio-1622, 986 N.E.2d 28.

**{¶ 2}** We also accepted a discretionary appeal filed by FirstMerit Bank on the following proposition of law: "A party cannot use Civ.R. 60(B) to enforce an alleged oral forbearance agreement when the statute of frauds would prohibit that party from enforcing the same agreement through a complaint or counterclaim." We consolidated the certified conflict with the discretionary appeal for purposes of resolution. *Id.*

**{¶ 3}** After reviewing the matter, we answer the certified question in the affirmative and conclude that a party cannot assert an oral agreement pertaining to an interest in land in an effort to defeat a judgment entered pursuant to a written

contract. Accordingly, we reverse the judgment of the appellate court and reinstate the judgment of the trial court.

**Factual Background and Procedural History**

**{¶ 4}** On June 27, 2005, Ashland Lakes, L.L.C., Daniel Inks, and David Slyman borrowed $3,500,000 from FirstMerit Bank, N.A., and executed a promissory note in favor of FirstMerit secured by a mortgage on several parcels of real estate aggregating approximately 130 acres of land located at Silverstone Lake in Ashland County and the personal guaranties of Daniel and Deborah Inks and David and Jacqueline Slyman. Both the note and the personal guaranties contained cognovit provisions authorizing confession of judgment.

**{¶ 5}** Ashland Lakes, Inks, and Slyman defaulted on the promissory note, and FirstMerit initiated foreclosure proceedings in January 2009. The parties subsequently entered into two successive written standstill agreements and a third written forbearance agreement in an effort to resolve the deficiency and avoid foreclosure. Each contained cognovit provisions authorizing confession of judgment and further provided: "No amendment, modification, rescission, waiver or release of any provision of this Agreement shall be effective unless the same shall be in writing and signed by the parties hereto." When those agreements expired, the common pleas court entered a decree in foreclosure and appointed a private auctioneer, who scheduled a property auction for March 9, 2011.

**{¶ 6}** In January 2011, Inks and Slyman met with Thomas Krumel, a senior vice president at FirstMerit in charge of the Ashland Lakes loan, regarding the terms upon which FirstMerit would release its mortgage and the balance of any deficiencies.

**{¶ 7}** On Friday, March 4, 2011, FirstMerit sent Inks a term sheet setting forth conditions for cancellation of the scheduled March 9, 2011 auction. Those terms required that FirstMerit receive a $200,000 deposit and $9,000 appraisal fee by March 7, 2011; upon execution of a forbearance agreement and receipt of the

payment, FirstMerit would cancel the auction and stand still from exercising its rights and remedies for 45 days. Additionally, the term sheet provided that upon receipt of various payments by specified dates, FirstMerit would release the mortgage upon the properties and deliver either a covenant not to sue or a release of any remaining obligations due under the loan. The document also stated in bold print that "until such time that FirstMerit executes a written agreement providing for forbearance * * * there is no forbearance granted."

{¶ 8} Inks claims that he orally informed Krumel on March 7, 2011, that he could raise only $150,000 for the deposit and that Krumel stated that $150,000 was "doable." Krumel, however, maintains that he responded only that FirstMerit might consider a lower deposit if Inks could not raise the $200,000. Following that conversation, Krumel sent a draft forbearance agreement to Inks that provided for a $200,000 deposit. In response, Inks sent Krumel a letter with written objections to the agreement, including a reference to delivering $150,000 the next day.

{¶ 9} Inks and Krumel spoke on the morning of March 8, 2011, regarding the $150,000 payment. Inks maintains that he attempted to contact Krumel with the payment details later that day but that Krumel returned his call at the close of business and informed him that it was too late to make the payment and that the property would proceed to sale. On March 9, 2011, the properties were sold at auction.

{¶ 10} The sale of the properties resulted in a deficiency, and therefore FirstMerit subsequently obtained a cognovit judgment for $3,337,467.15 plus interest, costs, and attorney fees against the Inkses and Slymans on the cognovit provisions of their personal guaranties and the written forbearance agreement.

{¶ 11} The Inkses and Slymans then moved for relief from judgment pursuant to Civ.R. 60(B), asserting as a defense that they had reached an oral settlement agreement with FirstMerit and that FirstMerit had agreed to cease all

legal proceedings and release them from all obligations owed to FirstMerit. They also requested leave to file their own answer along with a counterclaim "seeking to enforce performance of the settlement agreement and to recover damages." The trial court denied the motion, determining, inter alia, that the statute of frauds barred their defense.

{¶ 12} On appeal, the Ninth District recognized that R.C. 1335.05 provides that " '[n]o action shall be brought * * * upon a contract or sale of lands * * * unless the agreement upon which such action is brought * * * is in writing,' " and held: "[T]he Slymans and Inkses did not attempt to 'bring an action' against FirstMerit, they merely raised the oral forbearance agreement as a defense to FirstMerit's action against them. Accordingly, the trial court incorrectly concluded that their defense was barred under the statute of frauds." 2012-Ohio-5155, ¶ 22. Thus, the appellate court reversed the judgment of the trial court and remanded the cause for further proceeding.

{¶ 13} On appeal to this court, FirstMerit asserts that R.C. 1335.05 bars the enforcement of oral agreements concerning an interest in land regardless of the procedural mechanism a party uses to try to enforce such agreements, that a Civ.R. 60(B) motion seeking to vacate a judgment and assert a counterclaim constitutes an action within the meaning of the statute of frauds, and that historically, courts have applied the statute of frauds to bar both civil actions and defenses seeking to enforce oral agreements within the statute's reach. It also argues that the appellate court's holding vitiates the statute of frauds, leads to the absurd result of allowing an unenforceable oral agreement to undo a judgment, and undermines settled transactions by creating uncertainty as to when an enforceable agreement is reached.

{¶ 14} In response, the Inkses and Slymans assert that the term "action," as used in R.C. 1335.05 and 1335.02(B), means the filing of a civil lawsuit and does not include defenses raised in an action. And they urge that if the term

4

"action" is ambiguous, then R.C. 1335.05 should be read in pari materia with R.C. 2307.01, which provides a definition of "action." Using that definition, they maintain that a Civ.R. 60(B) motion is not an action and thus a Civ.R. 60(B) motion raising an oral agreement as a defense is not barred by the statute of frauds. They also note that the conflict case, *Nicolozakes v. Deryk Gabriel Tangeman Irrevocable Trust*, 10th Dist. Franklin No. 00AP-7, 2000 WL 1877521 (Dec. 26, 2000), relied on *Marion Prod. Credit Assn. v. Cochran,* 40 Ohio St.3d 265, 533 N.E.2d 325 (1988), which we later recognized as a parol evidence case in *Galmish v. Cicchini,* 90 Ohio St.3d 22, 29, 734 N.E.2d 782 (2000), fn 2. Finally, they maintain that the agreement reached between Ashland Lakes and FirstMerit is an enforceable oral settlement agreement.

{¶ 15} Thus, the issue is whether a party can assert an oral agreement involving an interest in land as a defense in a Civ.R. 60(B) motion for relief from judgment.

## Law and Analysis

### *The Statute of Frauds*

{¶ 16} Ohio's statute of frauds, R.C. 1335.05, provides: "*No action shall be brought* whereby to charge the defendant * * * upon a contract or sale of lands * * * or interest in or concerning them * * * unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith * * *." (Emphasis added.)

{¶ 17} The question of whether the statute of frauds precludes a defendant from asserting an oral agreement as a defense to an action has been resolved for more than 150 years by virtue of our decision in *Finch v. Finch,* 10 Ohio St. 501 (1860). There, a widow filed a petition for dower, but the sons of the decedent asserted in their answer that she had entered into an oral antenuptial agreement in which she agreed to "release and relinquish all right, title, and claim" to the decedent's estate. *Id.* at 502-503. The widow filed a motion to strike the sons'

answer on the basis that the agreement fell within the statute of frauds and thus constituted no defense to the action. *Id.* at 505. In response, the sons argued that the statute of frauds "only provides that 'no action shall be brought whereby to charge the defendant, upon any agreement upon consideration of marriage,' such agreement may be available as a defense, though it could not be as the foundation of an action upon it." *Id.* at 507. In analyzing this argument, we stated that "[s]uch a distinction, however, so far as we know, has never been recognized; but, on the contrary, it has been held that a statute, in language identical with ours, renders agreements within it equally available whether in the defense or the prosecution of an action." *Id.,* citing Browne, *Treatise on the Construction of the Statute of Frauds*, Section 131 (1857), and *Comes v. Lamson*, 16 Conn. 246 (1844).

{¶ 18} Similarly, in *Reinheimer v. Carter*, 31 Ohio St. 579, 579-580 (1877), the Carters sued on a promissory note and mortgage, and Reinheimer denied liability in his answer, relying on an oral agreement allegedly entered into with Mrs. Carter. The Carters claimed that Reinheimer failed to state facts sufficient to constitute a defense. *Id.* Specifically, we addressed Reinheimer's failure to allege that the agreement, which could not be performed within a year, was in writing as required by the statute of frauds. *Id.* at 586. We affirmed the judgment in favor of the Carters and held at paragraph two of the syllabus: "Where a defense to an action is founded on an agreement not to be performed within a year, the answer must show that such agreement was in writing."

{¶ 19} Courts in other jurisdictions have also long recognized that "a contract within the condemnation of the [statute of frauds] 'can not be made the ground of a defense, any more than of a demand; that the obligation of the plaintiff to perform it is no more available to the defendant in the former case than the obligation of the defendant to perform it would be to the plaintiff in the latter case.' " *Wheeler v. Frankenthal & Bro.*, 78 Ill. 124, 126 (1875), quoting Browne

at Section 131, and citing *Comes,* 16 Conn. 246, *Scotten v. Brown,* 4 Del. 324 (Super.Ct.1845), *King v. Welcome,* 71 Mass. 41 (1857); *Payson v. West,* Walker 515 (Miss.1832), *Sennett v. Johnson,* 9 Pa. 335 (1848), *Finch,* 10 Ohio St. at 507, and *Scott v. Bush,* 26 Mich. 418 (1873); *Bernier v. Cabot Mfg. Co.*, 71 Me. 506, 510 (1880).

{¶ 20} Moreover, as we explained in *Olympic Holding Co., L.L.C. v. ACE Ltd.,* 122 Ohio St.3d 89, 2009-Ohio-2057, 909 N.E.2d 93, at ¶ 32, citing *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938), paragraph one of the syllabus, "[a]greements that do not comply with the statute of frauds are unenforceable." Thus, oral agreements that pertain to matters covered by the statute of frauds cannot be enforced as either a claim or defense. *See Tague v. Hayward*, 25 Ind. 427, 429-430 (1865) ("as the contract was not in writing and signed by the mother, and was not to be performed within a year, no action could be maintained to enforce it * * *. To allow the defendant to avail himself of it as a defense would be enforcing it in his favor while the same right is denied to the other party, thus defeating the very object of the statute"); *McGinnis v. Fernandes*, 126 Ill. 228, 232, 19 N.E. 44 (1888) ("The well-settled rule of the law is that a verbal contract within the condemnation of the statute of frauds cannot be enforced in any way, either directly or indirectly, and cannot be made either the ground of a demand or the ground of a defense"); *Terry v. Terry*, 264 Ky. 625, 95 S.W.2d 282, 285 (1936) (noting that generally, "contracts which are within the statute of frauds can no more be made the basis of a defense than the subject of an original action, if the result is an indirect enforcement of the contract").

{¶ 21} In addition, this sentiment is expressed in the Restatement of the Law 2d, Contracts, Section 138 (1981), which provides: "Where a contract within the Statute of Frauds is not enforceable against the party to be charged by an action against him, it is not enforceable by a set-off or counterclaim in an action brought by him, *or as a defense to a claim by him*." (Emphasis added.)

{¶ 22} Thus, we adhere to the well-established principle that the statute of frauds bars a party from enforcing an oral agreement falling within the statute in either the prosecution or defense of an action. Here, by asserting the oral agreement as a defense pursuant to Civ.R. 60(B) and requesting leave to file a counterclaim to enforce the agreement and recover damages, the Inkses and Slymans seek enforcement of that oral agreement. Thus, we must also consider whether that oral agreement falls within the coverage of R.C. 1335.05 as an agreement pertaining to an interest in land.

*Interest in Land*

{¶ 23} We have long held that "a mortgage is a conveyance within the statute of frauds and perjuries." *Webb's Admr. v. Roff*, 9 Ohio St. 430 (1859), paragraph one of the syllabus; *see also Holmes v. Gardner,* 50 Ohio St. 167, 176, 33 N.E. 644 (1893). We have explained that while a mortgage is a lien for a debt, it also is a conveyance of property that passes the property conditionally to the mortgagee as well as a transfer of property as security for the debt. *Holmes* at 176, quoting *United States v. Fisher*, 6 U.S. 358, 2 Cranch 358, 2 L.Ed. 304 (1805), and *Conard v. Ins. Co.*, 26 U.S. 386, 1 Pet. 386, 7 L.Ed. 189 (1828).

{¶ 24} Similarly, as the Supreme Court of Alabama recognized in *Casey v. Travelers Ins. Co.*, 585 So.2d 1361, 1363 (Ala.1991), "an agreement to release lands from the effect of a mortgage is an agreement for the transfer of real property and thus falls within the Statute of Frauds." *See also Douglas Co. v. Gatts*, 8 Ohio App.3d 186, 187, 456 N.E.2d 841 (11th Dist.1982) ("an oral agreement to release or discharge a mortgage is within the Statute of Frauds").

{¶ 25} Here, the alleged oral agreement between Inks and FirstMerit does pertain to an interest in land, because it involves the terms upon which FirstMerit allegedly agreed to release the mortgage. As such, even if it is characterized as a settlement agreement, it falls within R.C. 1335.05. *See Sherman v. Haines,* 73 Ohio St.3d 125, 129, 652 N.E.2d 698 (1995) (reinstating the trial court's

judgment denying plaintiffs leave to file an amended complaint alleging breach of an oral agreement falling within R.C. 1335.05, which plaintiffs asserted was a settlement agreement, because "[h]aving been entirely oral, the agreement violated R.C. 1335.05"). Because there is no evidence that this agreement is in writing or is signed by FirstMerit, it does not comply with R.C. 1335.05 and is unenforceable.

{¶ 26} Thus, because this oral agreement falls within the statute of frauds, the Inkses and Slymans are precluded from asserting it as a defense in support of their motion for relief from judgment.

### Conclusion

{¶ 27} Having determined that the oral agreement in this case is covered by R.C. 1335.05, after applying our longstanding precedent, we conclude that the Inkses and Slymans are precluded from raising it as a defense in a motion for relief from judgment. Therefore, we reverse the judgment of the Ninth District and reinstate the trial court's decision denying the Inkses and Slymans' Civ.R. 60(B) motion for relief from judgment.

Judgment reversed.

O'CONNOR, C.J., and PFEIFER, LANZINGER, KENNEDY, FRENCH, and O'NEILL, JJ., concur.

_____

Kahn & Kruse Co., L.P.A., Scott H. Kahn, and Gregory J. Ochocki, for appellees.

Baker & Hostetler, L.L.P., Thomas D. Warren, Brett A. Wall, Patrick T. Lewis, and Dustin M. Dow, for appellant.

Vorys, Sater, Seymour & Pease, L.L.P., John J. Kulewicz, and Jeffery E. Smith; and Jeffrey D. Quayle, urging reversal for amicus curiae, Ohio Bankers League.

_____