[Cite as *Watson v. Franklin Univ.*, 2019-Ohio-2929.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Nana Watson, | : | |
| Plaintiff-Appellant, | : | |
| v. | : | No. 18AP-146 |
| | | (C.P.C. No. 16CV-9530) |
| Franklin University, | : | |
| | | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on July 18, 2019

**On brief:** *Ambrose Moses, III*, for appellant. **Argued:** *Ambrose Moses, III.*

**On brief:** *Kegler, Brown, Hill & Ritter Co., L.P.A.* and *Robert G. Cohen*, for appellee. **Argued:** *Robert G. Cohen.*

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, Nana Watson, appeals from a decision of the Franklin County Court of Common Pleas entered on January 20, 2018. In its decision, the trial court granted the motion for summary judgment filed by defendant-appellee, Franklin University ("university"), as to Watson's claim for promissory estoppel. For the reasons that follow, we affirm the decision of the trial court.

## I. FACTS AND PROCEDURAL BACKGROUND

### A. Procedural Background

{¶ 2} This matter commenced on October 5, 2016 through the refiling of an earlier case, Franklin C.P. No. 15CV-1316. *See generally* Oct. 5, 2016 Compl. In her complaint, Watson asserted three claims against the university: breach of contract, breach of implied covenant of good faith and contract, and promissory estoppel. On March 30, 2017, the

university filed its first motion for summary judgment, seeking dismissal of all three of Watson's causes of action.  By decision and entry filed July 31, 2017, the trial court granted the university's motion as to Watson's claims for breach of contract and breach of implied covenant of good faith and contract, leaving only the claim for promissory estoppel before the trial court.

{¶ 3}   On December 14, 2017, after discovery had commenced, the university filed a motion for summary judgment regarding Watson's claim for promissory estoppel. Watson filed a memorandum in opposition on January 8, 2018.  The university filed a reply on January 16, 2018.  On January 30, 2018, the trial court issued and filed in the record a 16-page decision and entry granting the university's motion for summary judgment and dismissing Watson's claim for promissory estoppel.  Watson timely appealed the trial court's judgment.

### B. Facts

{¶ 4}   On January 3, 2011, Watson was hired as the university's director of development.  On November 13, 2013, she received a letter from Christi Cabungcal, the university's Chief of Staff and Senior Vice President, Administration, notifying Watson that her position was eliminated effective November 13, 2013 (the same day), which also would be her last date of employment. Numbered paragraphs one and six of the letter included an offer to continue Watson's salary for up to six months from that date, subject to certain conditions, as follows:

> 1. The University will continue your normal, full-time compensation, unless you obtain full-time employment as discussed below, through May 13, 2014. * * *
>
> * * *
>
> 6. If you obtain full-time employment prior to May 13, 2014 your compensation will cease as of the date you begin your full-time employment. If you obtain part-time employment prior to May 13, 2014, your compensation will be reduced by the amount received as a result of the part-time employment. You agree to provide us evidence of such employment immediately.

(Ex. 1 at 1, Compl.)  The final paragraph of the university's letter stated:

> There are no conditions, agreements or understandings between the University and you other than those set forth in this letter. *You are entitled to a period of twenty-one (21)*

> *calendar days in which to review and consider signing this document before signing it.* You may use as much, or as little, of this time as you desire; however, as I am sure you can understand, no payments or other consideration can be made until our agreement is signed and becomes effective. In addition, if you should change your mind for any reason, you may rescind the agreement anytime within seven (7) days after the date of your signature by delivering written notice of revocation to Christi Cabungcal, Chief of Staff and Senior Vice President, Administration. We encourage you to consult your own attorney before signing this document.

(Emphasis sic.) *Id.* at 2. Printed on the letter, below Cabungcal's signature block, was a place for Watson to sign to signify her acceptance of the university's terms.

{¶ 5} By letter dated November 27, 2013, Watson rejected the university's proposed severance package and countered with her own proposed agreement. Watson's proposal included provisions requiring the university to extend her normal compensation and health insurance benefits for an additional year, through May 13, 2015, without regard to any employment she might obtain elsewhere before that date.

{¶ 6} Watson discussed her counteroffer with Cabungcal by telephone the morning of December 3, 2013. At 10:24 a.m. that day, Cabungcal e-mailed Watson a summary of their telephone conversation, which included the bullet points from Watson's counteroffer letter, including the bullet point that noted continuation of full-time compensation and insurance benefits through May 13, 2015. Sometime between 10:24 a.m. and 3:38 p.m. on December 3, Cabungcal advised Watson by telephone that the end date for the severance package was 2014, not 2015. At 3:48 p.m. on December 3, 2018, Cabungcal e-mailed the following correction to Watson:

> This email serves as a correction to the email below [sent at 10:24 a.m.]. As I stated in our phone call this afternoon, I misread the first bullet point to be 2014 as opposed to 2015 which is why I put 2014 in the revised agreement I gave you today. [The university] is agreeable to May of 2014.

(Ex. 1 at 6, Compl.)

{¶ 7} Forty-four minutes later, at 4:32 p.m., Watson e-mailed her response to Cabungcal, stating she hoped the university would honor the 2015 date and acknowledging that an agreement would need to be crafted to reflect the terms of her counter proposal:

It is quite unfortunate that you have **retracted** the terms of the agreement that you made with me verbally and in writing today. Please refer to the email that you sent to me at 10:24 a.m.

I trust you will honor the terms that were so stipulated and that a forthcoming agreement can be crafted to reflect same. By doing so, we can move forward in a conciliatory fashion.

(Emphasis sic.) *Id.*

{¶ 8} Approximately 48 minutes later, at 5:20 p.m., Cabungcal e-mailed Watson again regarding the misunderstanding about the end date for Watson's severance agreement. Cabungcal wrote: "As I mentioned in my email, below, I misunderstood this to be 2014. [The university] believes that our offer of salary continuation through May 13, 2014, is very fair." *Id.* at 5.

{¶ 9} The parties were unable to reach consensus on the terms of Watson's severance, and thus no agreement was signed. Watson subsequently commenced litigation against the university. The trial court previously dismissed two of Watson's three claims, leaving only her claim for promissory estoppel. Watson now appeals the January 30, 2018 decision of the trial court granting summary judgment as to her remaining claim of promissory estoppel.

## II. ASSIGNMENT OF ERRORS

{¶ 10} Watson presents for our review two assignments of error:

> 1. The trial court erred in granting summary judgment on the breach of contract claim in this case.
>
> 2. The trial court erred in granting summary judgment on the promissory estoppel claim in this case.

## III.  LAW AND DISCUSSION

### A.  Standard of Review

{¶ 11} The trial court resolved Watson's complaint by summary judgment after orders were entered governing discovery between the parties:

> Appellate review of summary judgment motions is de novo. *Helton v. Scioto Cty. Bd. of ComGeorgia* (1997), 123 Ohio App. 3d 158, 162, 703 N.E.2d 841. When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court

> "stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.* (1997), 122 Ohio App. 3d 100, 103, 701 N.E.2d 383.

*Rose v. Ohio Dept. of Rehab. & Corr.*, 173 Ohio App.3d 767, 2007-Ohio-6184, ¶ 18 (10th Dist.).

{¶ 12} Thus, when reviewing an appeal of an order granting a motion for summary judgment, this Court uses the same standard of review as the trial court. *Freeman v. Brooks*, 154 Ohio App.3d 371, 2003-Ohio-4814, ¶ 6 (10th Dist.), citing *Maust v. Bank One of Columbus, N.A.*, 83 Ohio App.3d 103, 107 (10th Dist.1992), *jurisdictional motion overruled*, 66 Ohio St.3d 1488 (1993). And an appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 711 (4th Dist.1993). In determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence according to the standard set forth in Civ.R. 56, as well as according to applicable case law. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992); *Cooper v. Red Roof Inns, Inc.*, 10th Dist. No. 00AP-876 (Mar. 30, 2001).

{¶ 13} Civ.R. 56(C) requires that:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56 has been described as a means to facilitate the early assessment of the merits of claims, to foster pre-trial dismissal of meritless claims, and to define and narrow issues for trial. *Telecom Acquisition Corp. I v. Lucic Ents.*, 8th Dist. No. 102119, 2016-Ohio-1466, ¶ 92. *See also Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 170 (1997) (Cook, J., concurring in part and dissenting in part). As such, summary judgment is a procedural device designed to promote judicial economy and to avoid needless trials.

> "The goal of a motion for summary judgment is to narrow the issues in a case to determine which, if any, should go to trial. ' "The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist." ' *State ex rel. Anderson v. The Village of Obetz*, 10th Dist. No. 06AP-1030, 2008-Ohio-4064, ¶ 64, quoting *Lakota Local*

> *School Dist. Bd. of Edn. v. Brickner*, 108 Ohio App.3d 637, 643,
> 671 N.E.2d 578 (1996) (citations omitted.)"

*Erickson v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 16AP-74, 2017-Ohio-1572, ¶ 19, quoting *Thevenin v. White Castle Mgt. Co.*, 10th Dist. No. 15AP-204, 2016-Ohio-1235, ¶ 45 (Brunner, J., concurring). Thus, a party seeking summary judgment on the grounds that a nonmoving party cannot prove its case bears the initial burden of informing the trial court of the basis for the motion and must identify those parts of the record which demonstrate the absence of a genuine issue of material fact on the elements of the nonmoving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93 (1996).

{¶ 14} If the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party does not respond, summary judgment, if otherwise appropriate, shall be entered against the nonmoving party. *Id.* The nonmoving party may not rest on the mere allegations or denials of his or her pleadings, but must respond with specific facts showing there is a genuine issue for trial. Civ.R. 56(E); *Dresher* at 293. *See also Erickson* at ¶ 19-20.

### B. Promissory Estoppel Doctrine

{¶ 15} The university relied on the following factual bases in its motion for summary judgment on Watson's promissory estoppel claim:

> (1) [Watson] admitted in her deposition that she understood that any final agreement with [the university] would be memorialized in a written document signed by both her and [the university] – thereby eliminating as a matter of law the element of reasonable reliance necessary to support a promissory estoppel claim; (2) [Watson] admitted in her deposition that she did not undertake any actions or forbearance in detrimental reliance upon the [university] email that she asserts as the basis for her promissory estoppel claim – thereby eliminating another element of such claim and eliminating any recoverable damages; and (3) [Watson] admitted in her deposition that she consulted with legal counsel during the severance negotiation with [the university], rendering her a "sophisticated party" for the purposes of such negotiation and eliminating any basis for distinguishing the case of James Seaman v. Fannie Mae, 2009-Ohio-4030 (8th Dist. 2009).

(Dec. 14, 2017 University's Mot. for Summ. Jgmt. at 1.)

{¶ 16} This Court has held that "[t]he elements necessary to establish a claim for promissory estoppel are a (1) promise, (2) clear and unambiguous in its terms, (3) reliance that is reasonable and foreseeable, and (4) injury caused by such reliance." *Patel v. Univ. of Toledo*, 10th Dist. No. 16AP-378, 2017-Ohio-7132, ¶ 21. While the reliance element is generally a question of fact left to the jury, it may be adjudicated on summary judgment when the plaintiff fails to present evidence to support reasonable and foreseeable reliance. *Am. Signature, Inc. v. Extreme Linen, LLC*, S.D. Ohio No. 2:12-cv-00601 (Mar. 31, 2015). *See also Heintz & Assocs. v. Diamond Cellar Holdings, LLC*, 10th Dist. No. 11AP-688, 2012-Ohio-1422.

## C. First Assignment of Error

{¶ 17} Watson argues the trial court erred in granting summary judgment because there were genuine issues of material fact as to whether a written contract existed. The university counters that Watson's contract claim is barred by the statute of frauds as incorporated in R.C. 1335.05.

{¶ 18} R.C. 1335.05 provides in pertinent part as follows:

> No action shall be brought * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

The Supreme Court of Ohio has held that "[a]n alleged oral agreement to pay money in installments is 'an agreement that is not to be performed within one year' pursuant to R.C. 1335.05 when the installment payment obligation exceeds one year." *Sherman v. Haines*, 73 Ohio St.3d 125 (1995), syllabus.

{¶ 19} It is undisputed that there is no written agreement or document signed by the university and Watson evidencing the severance and benefits terms Watson asserts in this case. Civ.R. 10(D) requires that where "any claim * * * is founded on an account or other written instrument, a copy of the account or written instrument must be attached to the pleading." Our review of the record fails to disclose that any writing signed by the university was attached to Watson's complaint as required by Civ.R. 10(D) and R.C. 1335.05. Rather, Watson offers as the required writing(s) the e-mails exchanged between Cabungcal, on behalf of the university, and herself, over the course of several hours on December 3, 2013.

This Court has held, however, that e-mails purporting to reference an agreement or some aspect of an agreement are not sufficient to satisfy the statutory requirement for a signed agreement as provided for in R.C. 1335.05.  *ELM Investments, Inc. v. BP Exploration & Oil, Inc.*, 10th Dist. No. 11AP-1000, 2012-Ohio-2950, ¶ 18-19.

{¶ 20} The university argues that "[t]he requirement of a signed agreement in this case was more than just a statutory obligation.  The undisputed evidence establishes that all of the offers and counteroffers between the parties in this case contemplated and required a final signed written agreement.  (*See* Watson Dep. Exs. 3, 4 and 5.)"  (University's Brief at 15.)  The university argues further that there could be no meeting of the minds without a signed, written agreement.

{¶ 21} Based on our independent review of the record, we find the university's argument to be well-taken.   Watson testified at her deposition that (1) the revised agreement she received from the university after the 10:24 a.m. e-mail was in writing, (2) the revised agreement she received included six months of severance, through May 13, 2014, and (3) she refused to sign the agreement.  Watson also testified that her telephone discussion with Cabungcal on December 3, 2013, as well as an e-mail sent at 3:48 p.m. on that day clarified that the revised agreement the university would be sending Watson would have a severance end date of May 13, 2014.  Where the evidence establishes that it was the expectation of all parties that no meeting of the minds would occur absent a final written agreement signed by all the parties, no party can base a legal claim on communications or correspondence that comprise the interim negotiations.  *Seaman v. Fannie Mae*, 8th Dist. No. 92751, 2009-Ohio-4030, ¶ 17 ("If a written agreement is contemplated, reliance upon statements made before an agreement is signed will be unreasonable as a matter of law, particularly when sophisticated business parties are involved in negotiations.").  *See also Carcorp, Inc. v. Chesrown Oldsmobile-GMC Truck, Inc.*, 10th Dist. No. 06AP-329, 2007-Ohio-380, ¶ 20 ("Until the documents are signed and delivered that game is not over. Businessmen would be undesirably inhibited in their dealings if expressions of intent and the exchange of drafts were taken as legally binding agreements.").

{¶ 22} Watson's deposition testimony evidences her understanding that any final agreement with the university would be in writing, would include all the terms of the

agreement, and would be signed by the university and herself.  Watson also conceded that some of the issues being negotiated were never resolved between the parties.

{¶ 23}  In its decision, the trial court noted that its decision entered on July 31, 2017 had dismissed Watson's breach of contract for failure to comply with the statute of frauds. The trial court relied in its decision on the following explanation of the law by the Supreme Court of Ohio that is based on long-established decisions outlining the application of the statute of frauds:

> If promissory estoppel is used as a bar to the writing requirements imposed by the statute of frauds, based on a party's oral promise to execute the agreement, the predictability that the statute of frauds brings to contract formation would be eroded. Parties negotiating a contract would no longer know what signifies a final agreement. Promissory estoppel used this way would open contract negotiations to fraud, the very evil that the statute of frauds seeks to prevent. Thus, "[t]o allow [a] plaintiff to recover on a theory of promissory estoppel where the oral contract is precluded by the State of Frauds, ' "would abrogate the purpose and intent of the legislature in enacting the statute of frauds and would nullify its fundamental requirements." ' " *Essco Geometric, Inc. v. Harvard Industries, Inc.* (Sept. 30, 1993), E.D. Mo. No. 90-1354C(6), 1993 WL 766952, *3, quoting *Sales Serv. V. Daewoo Internatl. (Am.)* (Mo. App.1989), 770 S.W.2d 453, 457, quoting *Morshinkhoff v. De Luxe Laundry & Dry Cleaning Co.* (Mo.App. 1961), 344 S.W.2d 639, 644. See also *Kahn v. Cecelia Co.* (D.C.N.Y. 1941), 40 F.Supp 878, 880, quoting *Deutsch v. Textile Waste Merchandising Co.* (1925), 212 A.D. 681, 685, 209 N.Y.S. 388 (declining to enforce an oral agreement because enforcing a promise that the defendant would reduce the agreement to writing would result in the " 'practical nullification of the statute of frauds' ").
>
> We decline to recognize an exception to the statute of frauds even when the promise to execute an agreement is fraudulent or misleading. If a party establishes that a promise to execute an agreement is misleading or fraudulent, promissory estoppel is an equitable remedy available to recover reliance damages.
>
> *Olympic Holding* [*v. Ace Ltd.*, 122 Ohio St.3d 89,] 2009-Ohio-2057, at ¶ 35-36.

(Jan. 30, 2018 Decision at 15.)

{¶ 24} Having independently reviewed the record, we determine that Watson and the university failed to execute a final written, signed agreement constituting a contract. Consequently, there is no legally enforceable contract under the statute of frauds on which Watson may base a claim for breach of contract. We therefore hold that the trial court did not abuse its discretion in granting summary judgment as to Watson's breach of contract claim, there being no genuine issues of material fact regarding it. Accordingly, we overrule Watson's first assignment of error.

### D. Second Assignment of Error

{¶ 25} Watson argues the trial court erred in granting summary judgment as to her promissory estoppel claim. Having reviewed the evidence and drawn all reasonable inferences therefrom in favor of Watson, we disagree.

{¶ 26} In its 16-page decision, the trial court thoroughly addressed the issue of promissory estoppel and its adjudication in the context of a motion for summary judgment. The trial court cited case law applicable to this issue as follows:

> "Promissory estoppel arises when a defendant makes '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance.' " *Garb-Ko, Inc., v. Benderson*, 10th Dist. Franklin Nos. 12AP-430, 12AP-474, 12AP-475, 12AP-476, 2013-Ohio-1249, ¶ 18, quoting *Hortman v. Miamisburg*, 110 Ohio St. 3d 194, 2006-Ohio-4251, ¶ 23, 852 N.E.2d 716, quoting Reinstatment of the Law 2d, Contracts, Section 90, at 242 (1981). "The elements necessary to establish a claim for promissory estoppel are a (1) promise, (2) clear and unambiguous in its terms, (3) reliance that is reasonable and foreseeable, and (4) injury caused by such reliance." *Patel v. Univ. of Toledo*, 10th Dist. Franklin No. 16AP-378, 2017-Ohio-7132, ¶ 21. While the reliance element is generally a question of fact left to the jury, it may be adjudicated on summary judgment when the plaintiff fails to present evidence to support reasonable and foreseeable reliance. *Am. Signature, Inc. v. Extreme Linen, LLC*, S.D. Ohio No. 2: 12-cv-00601, 2015 U.S. Dist. LEXIS 41958, at *49 (Mar. 31, 2015). See also *Heintz & Assocs. v. Diamond Cellar Holdings, LLC*, 10th Dist. Franklin No. 11AP-688, 2012-Ohio-1422.

*Id.* at 3-4.

{¶ 27} The trial court summarized the timeframe relevant to Watson's promissory estoppel claim as follows:

- On the morning of <u>December 3, 2013, prior to 10:24 a.m.</u>, a telephone call took place between [Watson] and [Cabungcal] to negotiate terms of a severance package. (Def.'s MSJ at Ex. 1, Ex. 5 to Pl's Depo.)

- On <u>December 3, 2013 at 10:24 a.m.</u>, an e-mail was sent to [Watson] summarizing a telephone call. That e-mail incorporated the bullet points from [Watson's] counter-offer, which had changed the dates of the severance and health benefits from May 13, 2014 to May 13, 2015. (*Id.*)

- A phone call occurred sometime in <u>the afternoon (after 10:24 a.m., but before 3:48 p.m.) on December 3, 2013</u>, in which [Watson] was notified that the revised agreement would reflect severance and health benefits through 2014, not 2015. (*Id.*)

- An e-mail was sent on <u>December 3, 2013 at 3:48 p.m.</u> which memorialized the discussion on the phone call stating that the revised agreement would reflect severance and health benefits through 2014, not 2015. (*Id.*)

(Emphasis sic.) *Id.* at 4-5.

{¶ 28} The trial court next discussed the issue of reasonable and foreseeable reliance in this matter, observing that " '[i]f a written agreement is contemplated, reliance upon statements made before an agreement is signed will be unreasonable as a matter of law, particularly when sophisticated business parties are involved in the negotiations.' *Seaman v. Mae*, 8th Dist. Cuyahoga No. 92751, 2009-Ohio-4020, ¶ 17." (Jan. 30, 2018 Decision at 5.) The trial court concluded from the evidence before it that Watson was a sophisticated party and her reliance was unreasonable as a matter of law:

> Here, [Watson] had previously negotiated and entered a retirement agreement with [a prior employer] that included severance pay and benefits. Further evidence of [Watson's] sophistication includes her education, professional background, and consultation with [Human Resources] and legal professionals. [Watson's] arguments regarding Ms. Cabungcal's job title was unpersuasive. [Watson] was negotiating with Ms. Cabungcal, who was the Chief of Staff and Senior Vice President, Administration. While employed with [the university], [Watson's] job title was Director of

> Development. Both job titles held by [Watson] and Ms. Cabungcal, on their face, are impressive. [Watson] and Ms. Cabungcal were both able and capable to negotiate on the subject matter of the severance agreement.
>
> Based upon the foregoing and construing all evidence in [Watson's] favor, the Court finds that [Watson's] reliance was unreasonable as a matter law.

*Id.* at 10.

{¶ 29} The trial court further found that, even if Watson's reliance had been reasonable, she could not meet the injury element required for her promissory estoppel claim, given that her injury must be caused by her reliance. *Patel*, 2017-Ohio 7132, at ¶ 21. The trial court stated:

> Based on the facts in this case, [Watson's] reliance lasted from the morning on [sic] December 3, 2013 to the afternoon on the same date. "[T]he party claiming the estoppel must have relied on conduct of an adversary in such a manner as to change his position for the worse * * *." *Olympic Holding* [*v. Ace Ltd.*, 122 Ohio St.3d 89, 2009-Ohio-2057] at ¶ 39, quoting *Shampton v. City of Springboro*, 98 Ohio St.3d 457, 2003-Ohio-1913, 786 N.E. 2d 883, ¶ 34. Here, [Watson's] deposition testimony demonstrates that she did not rely in such a manner that she changed her position for the worse.

(Jan. 30, 2018 Decision at 10-11.) The trial court determined that Watson's deposition testimony established that she (1) was not pursuing any other employment opportunities or turning down any prospective employers between the date her position with the university was terminated and when she accepted a job with her subsequent employer, (2) did not recall having discussions with anyone about her negotiations with Cabungcal or the severance agreement during the time she was corresponding with Cabungcal on December 3, 2013, and (3) did not recall making any commitments as to what she was going to do with her severance money. The trial court found that Watson had no injury as a result of her reliance, stating "[n]o action or forbearance in reliance occurred between the morning of December 3, 2013 and the afternoon of that same date. There is no evidence, even when construing it in [Watson's] favor, to demonstrate that she changed her position for the worse." *Id.* at 15.

{¶ 30} Having independently reviewed the record and considered the matter de novo, we find the trial court did not err in granting summary judgment, there being no

material facts in dispute and the trial court having correctly applied the law to them.  We thus overrule Watson's second assignment of error.

## IV.  CONCLUSION

{¶ 31}  Based on our de novo review of the record, we hold the trial court's grant of summary judgment in favor of the university to have been appropriate.  Having reviewed the evidence and drawn all reasonable inferences therefrom in favor of Watson as we are required to do by Civ.R. 56, we find that the university was legally entitled to summary judgment based on those facts.  We overrule Watson's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN and LUPER SCHUSTER, JJ., concur.