[Cite as *Booth v. Copeco, Inc.*, 2017-Ohio-2897.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

John Booth                                    Court of Appeals No. L-16-1227

    Appellant                                Trial Court No. CI0201601241

v.

Copeco, Inc.                                  **DECISION AND JUDGMENT**

    Appellee                                 Decided:  May 19, 2017

* * * * *

Mark A. Davis, for appellant.

Thomas W. Connors, for appellee.

* * * * *

**OSOWIK, J.**

## Introduction

{¶ 1} This is an accelerated appeal.  The plaintiff-appellant, John Booth, appeals a

judgment by the Lucas County Court of Common Pleas that dismissed his case against

the defendant-appellee, Copeco, Inc.  Booth worked for Copeco as a commissioned

salesman. In his lawsuit, Booth alleged that Copeco breached the terms and conditions of his compensation agreement, and that Copeco was unjustly enriched by failing to pay him a commission. Copeco moved for summary judgment, arguing that there was no breach and that it compensated him above and beyond what the agreement called for.

{¶ 2} On appeal, Booth argues that an affidavit from a former Copeco sales manager demonstrates that an issue of fact exists regarding whether Copeco failed to compensate him properly.

{¶ 3} For the reasons that follow, we agree with the trial court that there are no genuine issues of material fact and that Copeco is entitled to judgment as a matter of law. Accordingly, we affirm the trial court's grant of summary judgment.

**Facts and Procedural History**

{¶ 4} Copeco is an office supply company throughout northern Ohio. Booth worked as a copier salesman for 18 months, until September 26, 2014. Under the terms of his employment, Booth received a base salary of $30,000 per year, plus monthly sales commissions and a quarterly bonus, if applicable. The formula, setting forth how Copeco calculated Booth's commissions and quarterly bonuses, is set forth in his March 25, 2014 "sales compensation plan."

{¶ 5} This lawsuit involves a business deal that Booth helped to negotiate between Copeco and the Lucas County Metropolitan Housing Authority ("LMHA"). Copeco agreed to lease office equipment to LMHA under an agreement executed on July 29,

2.

2014.  The deal represented new business for Copeco and fell within Booth's sale's territory.

{¶ 6} According to Copeco and its president, Brian Frank, the "sales revenue" for the LMHA transaction was $127,210.69, but that figure was impacted by a "lease buyout."  At the time of the transaction, LMHA was under lease with a number of other office supply companies.  To induce LMHA to contract with Copeco, Copeco offered to buy out those leases, whereby Copeco issued a rebate check to the LMHA, in the amount $43,465.27, to cover the remaining payments on the leases.  After the lease buyout amount was deducted, the sales revenue was reduced to $83,745.42.

{¶ 7} To determine the gross profit on the transaction, Copeco subtracted its cost for the equipment from the sales revenue.  Here, the cost for the equipment was $83,863.20.  Thus, according to Frank, it lost money on the deal, i.e. $83,745.42 (sales revenue) minus $83.863.20 (cost of equipment) = - $117.78.

{¶ 8} Under paragraph 5 of Booth's compensation plan, "[i]f a deal is sold below Base Price, the sales revenue will be adjusted according to company policy (GP/.38).  This is referred to as Commission Revenue."[1]

---

[1] Booth's compensation plan specified that lease buyouts would be deducted from the sales revenue if the deduction caused the sales revenue to fall below base price.  The "base price" is the "minimum selling price of equipment."  According to company records from the transaction, the base price in this case was $159.994.14.  Thus, with or without the lease buyout, the contract was sold below base price.  Therefore, under either scenario, the commission formula would have been GP/.38.

3.

{¶ 9} According to Frank's affidavit, because there was no gross profit on the LMHA transaction, Booth did not qualify for a commission. According to Frank, however, Copeco paid Booth $500 for his work on the LMHA deal.

{¶ 10} In support of his memorandum opposing summary judgment, Booth attached an affidavit from Matt Sugg. Sugg worked for Copeco for four months, as a sales manager, during the time of the LMHA transaction.

{¶ 11} According to Sugg, Booth made roughly 20 trips to LMHA in connection with the deal. Sugg claims that the value of the relationship with LMHA is worth about $500,000 in business to Copeco. Sugg claims that "Copeco played with the sales numbers to minimize sales commissions to representatives." He also opines that the sales compensation plan is "purposefully misleading." Sugg maintains that Booth should have been paid "at least $6,615.90 in commission using Copeco's own numbers."

{¶ 12} Copeco replied with a second affidavit from its president, Brian Frank, attesting to the fact that the deal with LMHA was worth about $97,000 from its inception through June of 2016. Frank also said that he discussed with Booth the fact that the LMHA deal would only go forward if Copeco agreed to sell "below cost." Frank claims that "Booth was agreeable to going ahead with the deal."

{¶ 13} The trial court granted Copeco's motion, finding that, as a matter of law, there was no genuine issue of material fact and that Copeco was entitled to judgment as a matter of law. Booth appealed, alleging three assignments of error.

4.

**Booth's Assignments of Error**

1.  The Trial Court Erred By Construing Facts Most Favorably to the Movant.

2.  The Trial Court Erred by Weighing the Evidence in the Affidavits.

3.  The Trial Court Erred by Granting Summary Judgment Between Conflicting Affidavits.

**Law and Analysis**

{¶ 14} Summary judgment is appropriate when the movant demonstrates that (1) there is no genuine issue of material fact; (2) the movant is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, that conclusion being adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997).

[A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no

evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party. *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); Civ.R. 56.

{¶ 15} Appellate review of summary judgment motions is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). When reviewing a trial court's decision granting summary judgment, we conduct an independent review of the record, and the appellate court "stands in the shoes of the trial court." *Mergenthal v. Star Banc Corp.*, 122 Ohio App.3d 100, 103, 701 N.E.2d 383 (12th Dist.1997).

{¶ 16} We address Booth's assignments of error together.

{¶ 17} To support a breach of contract claim, a plaintiff must present evidence of "the existence of a contract, performance by the plaintiff, breach by the defendant, and damage or loss to the plaintiff." (Quotation omitted.) *Kucan v. General Am. Life Ins. Co.*, 10th Dist. Franklin No. 01AP-1099, 2002-Ohio-4290, ¶ 8.

{¶ 18} The "construction of a written contract is a matter of law." *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, 801 N.E.2d 452, ¶ 9. Ohio courts "presume that the intent of the parties to a contract is within the language used in the written instrument. If [courts] are able to determine the intent of the parties from the plain language of the agreement, then there is no need to interpret the contract." *Id.* "[C]ontracts must be given a just and reasonable construction in order to carry out the presumed intent of the parties." *E.S. Preston Associates, Inc. v. Preston*, 24 Ohio St.3d 7, 9-10, 492 N.E.2d 441(1986).

{¶ 19} Booth alleges that he was entitled to a commission of $6,615.90 under the terms of the sales compensation plan. Booth's argument is based entirely upon the affidavit of Sugg, who states therein,

Based upon Copeco's own numbers of Commission Revenue of $83,745.42 * * *, Booth would be entitled to commission of at least 3.9% base plus 1.5% sales revenue gold plan quarterly bonus plus new customer incentive of 2.5% for a total of 7.9% commission equal to $6615.90. Sugg Affidavit at ¶ 7.

{¶ 20} Thus, Booth claims that his commission should be based on the sales revenue, without regard to the cost of the equipment. We find no support for such a

7.

calculation. Under the terms of his compensation plan, Booth's commissions were based upon the gross profit, defined as the sales revenue minus cost.[2]

{¶ 21} We disagree with Booth's proposed calculation for a second reason. It assumes the payment of a quarterly bonus, separate from his salary and monthly commission. Although Booth's compensation plan provides for the payment of a quarterly bonus, Booth needed to post at least $120,000 in quarterly sales revenue to qualify. According to Frank, Booth did not qualify for a quarterly bonus in the quarter in which the LMHA transaction was finalized, which Booth does not dispute.

{¶ 22} Alternatively, Booth argues that he ought to have been paid "the industry standard" of 10 percent of the transaction's gross revenue, including salary and commission. In support of this purported standard, he attached to his complaint an excerpt of a document, entitled "Copier Careers Articles" from 2001. The writer and publication of the document are not identified.

{¶ 23} In response to the alleged 10 percent industry standard, Copeco counters that Booth, during his employ, was paid $58,453.56 on sales of $344,420.00, or 17 percent of his total sales. Booth does not dispute Copeco's figures.

{¶ 24} We find the supposed industry standard, whether accurate or not, is legally irrelevant with respect to Booth's breach of contract claim.

---

[2] The trial court noted that the sales compensation plan does not define "gross profit." Accordingly, the court applied the "plain and ordinary meaning" to that term, defining it as "sales revenue less cost." Judgment Entry at 4 citing *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, ¶ 11. Neither party objected to the definition or offered an alternative meaning.

8.

**{¶ 25}** We also find that Copeco put forth evidence demonstrating that it did not breach the terms and conditions of the sales compensation plan and that Booth failed to set forth specific facts showing that there is a genuine issue for trial as to his breach of contract claim.

**{¶ 26}** We now turn to Booth's unjust enrichment claim. To succeed, a plaintiff must show that: (1) he conferred a benefit on the defendant; (2) the defendant knew of the benefit; and (3) the defendant's retention of the benefit without payment would be unjust under the circumstances. *Johnson v. Microsoft Corp.*, 106 Ohio St.3d 278, 2005-Ohio-4985, 834 N.E.2d 791, ¶ 20. In other words, for an unjust enrichment claim to arise, defendants must have unfairly benefitted from the plaintiff's services. *Id.*

**{¶ 27}** Where "there is a valid, enforceable contract * * * the doctrine of unjust enrichment is not applicable." *F&L Center Co., Ltd. v. H. Goodman, Inc.*, 8th Dist. Cuyahoga No. 83503, 2004-Ohio-5856, ¶ 16; *see also Ryan v. Rival Mfg. Co.*, 1st Dist. Hamilton App. No. C-810032, 1981 Ohio App. LEXIS 14729 (Dec. 16, 1981) ("[U]njust enrichment will not lie when the subject matter of that claim is covered by an express contract or a contract implied in fact."). The subject matter in *Ryan* was unpaid commissions, and the court affirmed granting summary judgment in favor of the defendants on the unjust enrichment claim because, whether the commissions were due, was covered under the parties' employment agreement.

9.

{¶ 28} The same is true here. Because Booth's sales compensation plan is a valid and enforceable agreement, the doctrine of unjust enrichment is inapplicable. Accordingly, Copeco is entitled to judgment, as a matter of law, as to that claim.

{¶ 29} Finally, we address some particular arguments made by Booth. First, he argues,

> [Copeco] attempted to create a dispute of fact by stating that it doesn't cook the books * * * and that instead it purposefully took a loss on the sale because it accepted trade equipment * * *. Trade in for equipment is like trading in a used car to buy a new one. Typically, the car dealership makes money on both ends by reselling the trade in and upon the sale of the new vehicle. This is no different.

{¶ 30} First, it is Booth, not Copeco, who argues the existence of a dispute of fact. Second, Booth's comparison of Copeco to a car dealer who profits at both ends of the deal—by leasing new equipment to LMHA and selling used equipment to someone else—falls flat. Contrary to Booth's claim, Copeco did not "accept trade equipment." The contract between Copeco and LMHA clearly demonstrates that Copeco did not take any interest in the equipment that LMHA leased from other office suppliers. Instead, that equipment was returned to those companies. Therefore, Booth is simply wrong when he says that Copeco could expect to make a profit by re-selling LMHA's used equipment. Simply put, it was not Copeco's to sell.

10.

{¶ 31} Next, Booth claims that Copeco "plays with its expense numbers to decrease commissions due" and that "it's well known in the industry that 'cost isn't cost.'" Neither Booth, nor the affiant upon whom he relies, Matt Sugg, provides any evidence to support the claim that Copeco manipulated expense numbers. Booth's vague, speculative allegations are insufficient to establish a genuine issue of material fact. *Gallagher v. O'Connor*, 2d Dist. Montgomery No. 19702, 2003-Ohio-5095, ¶ 19 ("Mere conclusory, self-serving statements in an affidavit do not create a genuine issue of material fact as they do not meet the requirements of Civ.R. 56(E) that 'affidavits shall be made on personal knowledge [and] shall set forth such facts as would be admissible in evidence.'").

{¶ 32} Finally, Booth's charge that Copeco "cooks the books" is spurious. This wholly unsupported and self-serving assertion is insufficient to demonstrate a material issue of fact. Were we to find otherwise, "a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party." *Bell v. Beightler*, 10th Dist. Franklin No. 02AP-569, 2003-Ohio-88, ¶ 33.

{¶ 33} For the foregoing reasons, we find all three assignments of error not well-taken. That is, we find that there is no genuine issue of material fact and that, construing

11.

the evidence in Booth's favor, Copeco is entitled to judgment as a matter of law. We affirm the judgment of the trial court. Pursuant to App.R. 24, costs are assessed to appellant.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.            _____
                                                       JUDGE

Arlene Singer, J.                        

                                                    _____
Thomas J. Osowik, J.                       JUDGE
CONCUR.

                                                    _____
                                                      JUDGE

12.