[Cite as *Herris v. Estate of Michel*, 2025-Ohio-5447.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

RODNEY HERRIS                                            COURT OF APPEALS NO. {48}L-24-1298

    APPELLANT                                       TRIAL COURT NO. CI0202303001

V.

ESTATE OF RENEE MICHEL

    APPELLEE                                        **DECISION AND JUDGMENT**

Decided:  December 5, 2025

* * * * *

Anthony J. Richardson, for appellant.

Joseph B. Clark, for appellee.

* * * * *

**OSOWIK, J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which granted the motion for summary judgment by defendant-appellee Estate of Renee Michel[1] against plaintiff-appellant Rodney G. Herris, Jr. For the reasons set forth below, this court affirms the trial court's judgment.

---

[1] Defendant Renee Michel passed away on August 27, 2023, and a Suggestion of Death notice was filed in the record on September 12. On December 4, the trial court granted appellant's motion to substitute Ms. Michel's estate as the defendant.

{¶ 2} Appellant presented one assignment of error: "The trial court committed reversible error by granting summary judgment against appellant."

## I. Background

{¶ 3} This matter began on July 10, 2023, when appellant filed a complaint against appellee alleging claims of breach of contract, promissory estoppel, quantum meruit, unjust enrichment, and fraud. Appellant alleged that he paid $494,000.00[2] for appellee's benefit on the expectation that he would "inherit their home and certain assets they shared," upon her passing "in recognition of her terminal brain cancer and the creation of mirrored wills." Without referencing a date or attaching a writing, they "entered into an agreement relating to their personal finances, private property, and the real property located at 604 River Road, Maumee, Ohio 43567." He explained, "Under this agreement, [appellee] was to purchase the property while [appellant] would assist with other payments for her benefit, including credit card debt and purchasing assets for both their use, totaling $494,000.00." Further, he alleged that upon appellee's death, appellant "would inherit the house and all their combined assets . . . valued at a total of approximately $800,000.00."

---

[2] Comprised of $150,000 in credit card payments plus $70,000 for the purchase of motor vehicles plus $80,000 for expenses related to "MD Anderson" and the brain cancer treatment plus $194,000 for unknown/unidentified items. In contrast, appellant averred in his "Affidavit of Facts" opposing summary judgment that, "To my knowledge, I contributed about $400,000.00, worth of payments."

2.

{¶ 4} Appellant was deposed on June 5, 2024, and testified that the parties met around the year 2004. By November of 2014, they began a personal relationship while they both resided in the state of New York, and they began cohabitating in New York in the spring of 2016.[3]

{¶ 5} Using the proceeds from her prior marriage, appellee, individually, purchased the residential property at 604 River Road, Maumee, Lucas County, Ohio on November 20, 2017.[4] Appellee's purchase of this Maumee home is a key moment in appellant's unilateral description of his agreement with appellee because appellant alleges he paid $150,000 towards its purchase:

> Q: [W]hen is it that you believe that you entered into an agreement with Renee Michel as it relates to your personal finances?
> A: Um, spring of 2017.
> Q. Spring of 2017. Okay. And was that before or after she acquired River Road?
> A: Before.
> Q: Okay. And . . . was this agreement reduced to writing?
> A: No.
> Q: Okay. Was anybody present while the agreement was reached between you and Renee other than you and Renee?
> A: No.
> Q: Were there any subsequent agreements that you reached with Renee after the spring of 2017 regarding your personal finances?
> A: Yes. . . our personal finances were intertwined from the time that we were together in spring of 2016 and every day that we did something together and we used each other's money, that, that's another agreement as part of the agreement. . . . [I]t was an ongoing agreement.
> Q: Okay. And what evidence, what written evidence do you have as it relates to the existence of this ongoing agreement?

---

[3] Inconsistently, appellant averred in his "Affidavit of Facts" opposing summary judgment that "we had previously resided together since 2015."
[4] Although Exhibit K from appellant's deposition is not with the deposition transcript, another copy was provided confirming the property transfer but not the purchase price.

3.

A: Um, I was put on the deed of the house, um, in September of 2019.

Q: Okay. All right. So how is it that your being put on the deed of the house in your opinion evidences an agreement that the two of you reached, some form of agreement regarding your real estate?

A: She wouldn't have put my, um, name on the deed as per our agreement until I had contributed my share towards the house, and it was pertinent that we did the deed before her brain surgery because she was diagnosed with terminal brain cancer. So she felt at that time that I had contributed over $300,000.

. . .

Q: How much are you claiming that you paid towards the purchase price of 604 River Road in Maumee?

A: [$]150,000.

Q: Okay. And . . . where are you deriving that number?

A: From the payments I made to her credit card debt. . . . I paid off $150,000 worth of her credit card debt [contributed after the 2017 purchase of the Maumee property].

. . .

Q: But was there a contract wherein she acknowledged that you had paid her . . . $150,000 and that's why she was transferring the deed from her name only into both of your names jointly?

A: No, there was nothing written.

. . .

Q: Is there anyone that ever witnessed you and Renee entering into an agreement that you outlined in your Complaint filed with the court?

A: No.

{¶ 6} The Maumee home was apparently mostly unoccupied between 2017 and March of 2019, when appellee and appellant moved from New York to Ohio.

{¶ 7} The following information is from appellant's "Affidavit of Facts" opposing summary judgment. In January 2019, while living in New York, appellee was diagnosed with terminal brain cancer. Contrary to his deposition testimony of a concrete agreement with appellee in the spring of 2017 before appellee purchased the Maumee home, appellant averred the agreement was formed two years later:

4.

In January of 2019, Renee and I offered to make an agreement with each other regarding our personal finances and property. Per our agreement, I agreed to pay off all of Renee's credit card and medical debts and bills, purchase assets and everyday necessities for her, contribute funds for our household and its necessities, and deposit money into Renee's accounts for her benefit and usage, and in exchange she agreed that she would purchase real property for both of us to jointly own and in which to reside.

. . .

Renee and I fully understood our promises to each other whereby I was to financially support her and she was to purchase our home for us, give me ownership in the home, and make me the sole owner of her property if she predeceased me.

Appellant and appellee moved into the Maumee home in March 2019.

{¶ 8} At his deposition, appellant testified that on August 28, 2019, appellee had surgery for her brain cancer. The night before appellant unsuccessfully attempted to have appellee sign a quitclaim deed granting appellant one-half interest in the Maumee home and to sign a new will. Then, one week after the brain surgery, on September 4, 2019, appellant brought appellee to an attorney's office to sign a survivorship deed, which is in the record.[5] Appellant testified:

I wasn't taking [my] name off the property in 2019, I was attempting to put my name on the property because I had paid my fair share and she might have died during surgery. So to cover my ass, yes. And we had discussed this for a year and a half before we bought the house, we were already a year and a half into our agreement when we bought the house and at the time of her brain surgery.

[5] Appellee attached the survivorship deed by Renee Michel, as grantor, to her summary judgment motion. That deed was prepared under R.C. 5302.05 and 5302.17 and named as grantees "Renee Michel and Rodney G. Herris, Jr., for their joint lives, reminder to the survivor of them." It was recorded on September 25, 2019, with the Lucas County Recorder's Office as instrument No. 20190925-0038724. The survivorship deed references prior instrument No. 20171122-0051427, presumably the November 20, 2017 deed when Renee Michel originally purchased the Maumee home.

5.

{¶ 9} The next significant chronological event occurred on November 22, 2021, when appellant signed a quitclaim deed to appellee relinquishing his one-half interest in the Maumee home.[6] Nevertheless, appellant testified that it was a voluntary transaction upon receiving "bad" legal advice from an unidentified third party.

{¶ 10} Appellant alleged in his complaint he "took actions to protect their assets, including removing his name from the deed to the property, with the intention of protecting both parties." Appellant testified that six months prior to that, or in the spring of 2021, appellee approached appellant to remove his name from the house, which he ultimately voluntarily did. "She had great anxiety that her sister put into her head that I had tax problems. I have never had a letter from the IRS. I've never had collections," despite testifying that he had not filed an income tax return since 1996 because he "never made enough money."[7] Appellant averred in his "Affidavit of Facts":

> I did this action because under the mirror wills, I was still to inherit the home upon Renee's passing, and I believed, based on the legal advice, removing my name from the deed would further protect our assets from

---

[6] Although Exhibit M from appellant's deposition is not with the deposition transcript, another copy was provided showing it was prepared under R.C. 5302.05 and 5302.06 and named as grantors "Rodney G. Herris, Jr., a single man, and Renee Michel, a single woman" and the grantee is Renee Michel. It was recorded on December 15, 2021, with the Lucas County Recorder's Office as instrument No. 20211215-0065561. The prior instrument reference is instrument No. 20190925-0038724.

[7] Appellant testified that in January of 2018, he retired after 35 years from Herris Brothers Tree Service, a tree service he owned in New York. He further testified that his only income is from Social Security for $307 per month. However, he also admitted to receiving periodic payments between 2019 and 2021 as an employee of appellee's business, Calling All Dogs. He averred that sometime before moving into the Maumee home in March 2019, appellant sold his New York home for $515,000 "with the intention of sharing the proceeds with Renee and contributing to her financial needs."

6.

[the] IRS or other administrative authorities coming after our assets because I had not filed my tax returns since 1996.

{¶ 11} Appellant alleged in the complaint that the parties "created mirrored wills in order to maintain the assets between one of them if the other should pass away." Those wills are not in the record before us, and we do not know when they were allegedly created. At a minimum, appellant does not have his own will. He averred in his "Affidavit of Facts": "I have not changed my will to date, although I do not have a copy of the will; I also do not have a copy of Renee's old will. Renee did not allow me to have a copy of my or her will after I [was] ordered to not contact her and not go near our home[.]"

{¶ 12} Appellant raises the next significant event: his ouster from the Maumee home in early 2022, which relates back to an incident on December 23, 2021. Appellant averred he was admitted into a local hospital between December 18 to 22, 2021 for "a mental health deficit resulting from brain damage resulting from severe bleeding stemming from an ulcer. . . . I was not in the right frame of mind [when I interacted with the Maumee police] because I was on medication following brain damage and being in the hospital for 3 to 4 days."

{¶ 13} Appellant included the Maumee police body-worn camera video as Exhibit A to his "Affidavit of Facts." As shown on the video, on December 23, 2021, appellant admitted to police he faked a heart attack, which caused appellee to call emergency medical personnel to the Maumee home. About five EMTs responded, and they called the Maumee police to the home because appellant was drunk and verbally and physically

7.

belligerent towards them. Two Maumee police officers arrived and attempted to deescalate appellant's hostility towards all of them and towards appellee. Appellant explained to police that he was arguing with appellee for not giving him proper caregiving. The EMTs left when the police took over.

{¶ 14} Shortly thereafter, the police physically restrained appellant on carpeted stairs due to his aggressive conduct towards appellee and towards them. Appellant sustained a bloody nose, and the EMTs were called back. Appellee and appellant were heard exchanging taunts. In addition, appellant issued a constant stream of loud profanities towards everyone present, which eventually included more backup police. The EMTs transported him to a local hospital for treatment, psychological evaluation, and then arrest. As he was being loaded into the ambulance, appellant loudly insisted that he would get a "payday" from the incident. The video then showed a police officer re-enter the home, with appellee's permission, to photograph the blood on the carpeted stiars. Appellee is recorded as saying that appellant is been an "a**hole for days" and "needs to be in a psych ward" because for the last four days "he's been crazy, manic, mental, going mad." Appellee insisted that appellant never physically harmed her or attempted to, but he did verbally attack her. She confirmed that appellant had a bleeding ulcer which was treated with medicine, not surgery, and since he returned home, "He's not been the same." The video ended with a review between police officers of the possible charges against appellant, including obstructing official business and assaulting emergency personnel.

8.

{¶ 15} The criminal charges ultimately issued against appellant are not in the record. However, appellant acknowledged in his complaint that appellee subsequently obtained a civil protection order against him. Appellant's complaint states appellee denied him access to all of his belongings at the home "after an incident with Maumee Police Department in which Plaintiff was assaulted in his home . . . [and] Defendant placed a temporary protection order against Plaintiff on January 10, 2022." Appellant averred in his "Affidavit of Facts" that, "It is true that Renee and I had our problems in the relationship and on January 10, 2022, Renee placed a restraining order against me. The order stemmed from her confusions after an event where I was assaulted and arrested in our home . . . by Maumee police officers." During his deposition, appellant was shown Exhibit J,[8] which is described as the January 19, 2022 civil protection order appellee obtained against appellant following the expiration of the temporary order. Appellant read into the record conclusion of law No. four: "After review of the evidence, the Court concludes that the respondent attempted to cause bodily injury and placed the petitioner in fear of imminent serious physical harm." Appellant then admitted during his deposition that he was charged with violating the protection order one-and-one-half years later, which would be about one month before appellee's death on August 27, 2023. The court's disposition of the matter is not in the record.

---

[8] Although Exhibit J is not with the deposition transcript in the record, another copy was provided showing the CPO, where appellant was ordered to vacate the Maumee home, was issued following a January 18, 2022 hearing and expired on January 10, 2024.

9.

{¶ 16} During his deposition, appellant acknowledged that in response to discovery requests, appellant produced appellee's last will and testament executed on August 29, 2022.[9] Appellant is not a named beneficiary in appellee's will and insists her "old will," the so-called "mirror will," named him as a beneficiary. Appellant averred in his "Affidavit of Facts":

> The only reason I contributed the over $400,000.00 for Renee's benefit was because I relied on her purchasing the home, us residing in it, my name being on the deed as a part owner of the home and her assets upon her death if she predeceased me because I was the beneficiary as such in her last will and testament (will).

{¶ 17} Appellee answered the complaint, generally denying the allegations. Discovery ensued, and on July 22, 2024, appellee filed a motion for summary judgment to dismiss appellant's complaint. Appellant opposed the motion. Then on December 17, 2024, the trial court granted appellee's motion. Appellant timely appealed.

## II. Standard of Review

{¶ 18} Summary judgment isolates and disposes of factually unsupported claims or defenses. *Dresher v. Burt*, 75 Ohio St.3d 280, 288 (1996). "The main purpose of the summary judgment statute is to enable a party to go behind allegations in the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Cunningham v. J. A. Myers Co.*, 176 Ohio St. 410, 413 (1964) (evaluating former R.C. 2311.041(D), now Civ.R. 56).

---

[9] Although Exhibit B from appellant's deposition is not with the deposition transcript, another copy was provided that did not include the referenced will.

10.

{¶ 19} We review de novo the trial court's decision on summary judgment. *Smathers v. Glass*, 2022-Ohio-4595, ¶ 30. In employing the same Civ.R. 56 standard as trial courts, we will uphold summary judgment when there is no genuine issue of material fact; the moving party is entitled to judgment as a matter of law; and when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can only come to one conclusion, and that is adverse to the nonmoving party. *Id.* at ¶ 31.

{¶ 20} The moving party "bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher* at 293.

{¶ 21} "[I]f the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." *Id.* "The party opposing the motion must show that any issue of material fact is genuine and not based merely on unsupported allegations or the pleadings." *Smathers* at ¶ 31. Under Civ.R. 56(C), "any inferences regarding the evidence, including the resolution of ambiguities or inconsistencies, must be made in a manner that favors the nonmoving party." *Id.* at ¶ 32. Thus, we may make reasonable inferences from supported facts, but we may not make inferences solely from another inference, leading to speculation and too much uncertainty

11.

as to what the facts are. *Hurt v. Charles J. Rogers Transp. Co.*, 164 Ohio St. 329, 332-33 (1955).

{¶ 22} For summary judgment purposes we do not weigh the evidence because "determining whether issues of disputed fact exist is different from making findings of facts." *Smathers* at ¶ 32. A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Beckloff v. Amcor Rigid Plastics USA, LLC*, 2017-Ohio-4467, ¶ 14 (6th Dist.).

### III. Analysis

{¶ 23} Appellant's complaint alleges claims against appellant for breach of contract, promissory estoppel, quantum meruit, unjust enrichment, and fraud. Appellee sought summary judgment on all claims.

### A. Breach of Contract

{¶ 24} "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41. "'To assert a claim that a contract existed, a plaintiff must allege facts showing an offer and an acceptance and a meeting of the minds, which is supported by consideration.'" *Bergman v. Genoa Banking Co.*, 2015-Ohio-2797, ¶ 31 (6th Dist.), quoting *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 2010-Ohio-2121, ¶ 23 (6th Dist.).

12.

{¶ 25} Appellee moved for summary judgment against appellant arguing there was no genuine issue as to any material fact whether appellee breached a contract with appellant because no binding contract existed between the parties. To satisfy her initial evidentiary burden under Civ.R. 56(C), appellee pointed to R.C. 1335.05, which states:

> No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default, or miscarriage of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in or concerning them, or upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.

"Thus, oral agreements that pertain to matters covered by the statute of frauds cannot be enforced as either a claim or defense." *FirstMerit Bank, N.A. v. Inks*, 2014-Ohio-789, ¶ 20.

{¶ 26} The record lacks evidence from appellant for summary judgment purposes of the basic elements of contract formation. According to appellant's "Affidavit of Facts," the binding agreement with appellee was formed two years after appellee successfully purchased the Maumee home by herself. For unexplained reasons, two years into her ownership, appellant averred that appellee approached appellant for his money to purchase (not refinance) the Maumee home. Appellant testified at his deposition that he paid $150,000 towards the purchase price of the Maumee home in the form of paying appellee's credit cards in 2019, although he had no evidence of appellee's ownership of

13.

the credit card accounts, no evidence of those credit card account numbers, and no evidence of her exclusive benefit of the items purchased with those credit cards. Rather, appellant testified that ever since they began cohabitating in 2016, his money was co-mingled with appellee's money from which their joint expenses were paid. This arrangement continued while they were cohabiting in the Maumee home where appellant lived rent free. Further, appellant testified that despite the comingling of funds, he contributed over $400,000 for appellee's exclusive benefit, although he could not identify expenses totaling that amount. In exchange for receiving appellant's money, appellant testified their agreement was that once appellee subjectively determined he had "contributed enough" money for appellee's exclusive benefit and "was comfortable with the amount," appellee would give him one-half ownership of the Maumee home with full ownership after appellee's death. Appellant testified the agreement between them was memorialized in lost "mirrored wills" and by the fact that appellee signed the survivorship deed in September 2019.

{¶ 27} Appellee showed it was undisputed that appellant could produce no writing signed by appellee in compliance with R.C. 1335.05: not regarding inheriting the Maumee home, nor payments actually directed to appellee's benefit to eventually own the real estate. Nor could appellant show that his ongoing performance under the alleged "agreement" was ever intended to be concluded within one year. Appellee testified "it was an ongoing agreement" for him to make payments for their joint living with the intent of his eventual ownership of the Maumee home because "our personal finances

were intertwined from the time that we were together in [the] spring of 2016." We agree with appellee. "Because the agreement at issue in this case was not in writing and was not capable of being completed within one year, it is unenforceable under R.C. 1335.05." *Holloway v. Bucher*, 2018-Ohio-3301, ¶ 28 (6th Dist.).

{¶ 28} We find that appellee met her initial burden as the movant for summary judgment on the breach of contract claim. The burden then shifted to appellant under Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial.

{¶ 29} Appellant averred in his "Affidavit of Facts" that the agreement with appellee was formed in January 2019 with the following description: "[I]n reliance on Appellee purchasing the home, Appellant residing at the home, his name being on the deed as a part owner, and eventually inheriting the home, Appellant begun (sic.) to pay Appellee's bills, credit card and medical debts, and financially support Appellee." Contrary to his own deposition testimony that his agreement with appellee for the real estate is unwritten, appellant then argued that "the mirrored wills was the memorialization of the written terms of their agreement." However, "[n]o agreement to make a will or to make a devise or bequest by will shall be enforceable unless it is in writing." R.C. 2107.04. It is undisputed that the alleged agreement to create "mirrored wills," along with the wills themselves, are simply not in the record. Nor is there anything in the record that appellant admitted appellee's will into probate. "Unless it has been admitted to probate or record, as provided in sections 2107.01 to 2107.62 or 2129.05 to

15.

2129.07 of the Revised Code, no will is effectual to transfer real or personal property." R.C. 2107.61. Thus, the lack of any written agreement between the parties is fatal to appellant meeting his burden to oppose summary judgment on his breach of contract claim. Where there is no evidence that the alleged agreement regarding the Maumee home between appellant and appellee is in writing or is signed by appellee, it does not comply with R.C. 1335.05 and is unenforceable. *FirstMerit Bank, N.A. v. Inks*, 2014-Ohio-789, ¶ 25; *Olympic Holding Co. v. ACE Ltd.*, 2009-Ohio-2057, ¶ 32.

{¶ 30} Nevertheless, appellant then argues that the statute of frauds does not apply because he performed his part of the agreement by contributing "roughly $400,000 worth of payments for Appellee's benefit." We disagree. The doctrine of part performance is an equitable doctrine creating an exception to the statute of frauds. *Saber Healthcare Group, L.L.C. v. Starkey*, 2010-Ohio-1778, ¶ 18 (6th Dist.). To be successful, appellant had the burden to show unequivocal acts by him exclusively referred to in the agreement upon which he detrimentally changed his position to make it impossible for the parties to remain in status quo. *Id.* at ¶ 20. Appellant's evidence in the record does not meet his burden under Civ.R. 56(E).

{¶ 31} We find that the record does not support appellant's burden under Civ. R. 56, and the trial court properly granted summary judgment to appellee on appellant's breach of contract claim. Here, appellant argues that although his finances were comingled with appellee's for household expenses, his "finances were still used for Appellee's benefit." Yet appellant admitted at his deposition that he and appellee

16.

"combined our money and we were using our money together for several years" and could not provide any evidence from the bank statements he submitted that the debits total $150,000 he allegedly paid appellee for the Maumee home. Further, payments to credit card companies, such as American Express and Discover, in those bank records could not be traced to credit card accounts exclusively owned by appellee. Further, appellant testified that he had no proof of his self-serving insistence that "I did not benefit from anything on the card[s]." Payments alone towards the alleged agreement for the Maumee home does not take that alleged agreement out of the statute of frauds. *Saber Healthcare Group, L.L.C. v. Starkey*, 2010-Ohio-1778, ¶ 26 (6th Dist.).

## B. Promissory Estoppel

{¶ 32} "The elements for promissory estoppel are: (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance on the promise, and (3) injury by relying on the promise." *Advantage Renovations, Inc. v. Maui Sands Resort, Co.*, 2012-Ohio-1866, ¶ 30 (6th Dist.). The promissory estoppel doctrine is a form of equitable relief where a court seeks to prevent injustice by effectively creating a contract where none existed. *Telxon Corp. v. Smart Media of Delaware, Inc.*, 2005-Ohio-4931, ¶ 58 (9th Dist.); *Olympic Holding*, 2009-Ohio-2057, at ¶ 39 ("An action for damages under promissory estoppel provides an adequate remedy for an unfulfilled or fraudulent promise.").

{¶ 33} Appellee moved for summary judgment against appellant arguing there was no genuine issue as to any material fact whether appellee is liable to appellant for

promissory estoppel because no clear and unambiguous promise existed between the parties about the Maumee home and other personal property.

{¶ 34} To satisfy her initial evidentiary burden under Civ.R. 56(C), appellee pointed to appellant's deposition and discovery responses that he cannot establish with sufficient clarity and unambiguity the exact parameters of the alleged promises between the parties. Appellee further pointed to the undisputed fact that, if appellee promised to transfer one-half ownership of the Maumee home to appellant and for him to receive the remainder upon appellee's death, she fulfilled that promise when the survivorship deed was recorded on September 25, 2019. Appellee then challenged the remaining elements of promissory estoppel by pointing to the undisputed fact that appellant voluntarily relinquished his rights to the Maumee home via quitclaim deed on November 22, 2021. Although appellant averred doing so because of receiving bad legal advice from an unidentified third party, appellee argued that does not raise a genuine issue of material fact to defeat summary judgment.

{¶ 35} We find that appellee met her initial burden as the movant for summary judgment on the promissory estoppel claim. The burden then shifted to appellant under Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial.

{¶ 36} Appellant argued, by pointing to his self-serving affidavit, that he met his obligations to the tune of $400,000 and reasonably relied on appellee's promises, but appellee "failed to adhere to her promises when she allowed Appellant to deed his

18.

interest back to her, removed Appellant from the will, and did not permit him to reside at the residence." Yet appellant testified that rather than appellee "allowing" appellant to sign and file the quitclaim deed on November 22, 2021, he did so voluntarily and without duress. Appellant also testified that there is nothing in writing evidencing the agreement to enter into "mirrored wills," let alone the "mirrored wills" themselves, such that his will-revocation claim fails as a matter of law under R.C. 2107.33. Unsupported, uncorroborated, and self-serving averments in appellant's "Affidavit of Facts" do not create genuine issues of material fact to defeat summary judgment. *Booth v. Copeco, Inc.*, 2017-Ohio-2897, ¶ 32 (6th Dist.)

{¶ 37} We find the record does not support appellant's burden under Civ. R. 56, and the trial court properly granted summary judgment to appellee on appellant's promissory estoppel claim.

### C. Quantum Meruit/Unjust Enrichment

{¶ 38} Appellant combines his arguments for his claims for quantum meruit and unjust enrichment. "Quantum meruit is generally awarded when one party confers some benefit upon another without receiving just compensation for the reasonable value of services rendered." *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 55 (1989). To find unjust enrichment, appellant must show three elements: a benefit conferred by appellant to appellee; knowledge by appellee of the benefit; and retention of the benefit by appellee under circumstances where it would be unjust to do so without payment. *Advantage Renovations, Inc. v. Maui Sands Resort, Co.*, 2012-Ohio-1866, ¶ 33

19.

(6th Dist.). The equitable doctrines of quantum meruit and unjust enrichment share the same essential elements but differ when calculating damages. *Pohmer v. JPMorgan Chase Bank, N.A.*, 2015-Ohio-1229, ¶ 20 (10th Dist.).

{¶ 39} Appellee moved for summary judgment against appellant arguing there was no genuine issue as to any material fact whether appellee is liable to appellant for quantum meruit and unjust enrichment for the same reasons argued with respect to promissory estoppel. Based on our previous discussion, we find that appellee met her initial burden as the movant for summary judgment on the promissory estoppel claim. Under Civ.R. 56(C), appellee points to appellant's deposition and discovery responses that of the over $400,000 appellant alleged he conferred onto appellee for her exclusive benefit, he could point to no evidence in the record to support that claim. Rather, the evidence supports the conclusion that appellant and appellee comingled their money for their joint benefit and use from the time they cohabited in New York until they no longer cohabitated in the Maumee, Ohio home. "The plaintiff seeking to recover under a theory of quasi-contract must prove that the benefit was not conferred upon the defendant gratuitously." *Spence v. First Fed. Sav. & Locan Ass'n of Delta*, 1992 WL 200922, *3 (6th Dist. Aug. 21, 1992). Moreover, appellant could not account for the entire $494,000 stated in his complaint he allegedly paid for appellee's exclusive benefit: "I don't know where the monies went . . . I don't have account numbers."

{¶ 40} The burden then shifted to appellant under Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial. Appellant

20.

pointed to his "Affidavit of Facts" to argue, "there cannot be a dispute surrounding whether Appellee retained a benefit from Appellant." We disagree. Once again, appellant's self-serving affidavit without some Civ. R. 56 corroborating evidence does not create a genuine issue of material fact to defeat appellee's summary judgment motion. *Pierre Investments, Inc. v. CLS Capital Group, Inc.*, 2022-Ohio-4311, ¶ 23 (6th Dist.).

{¶ 41} We find the record does not support appellant's burden under Civ. R. 56, and the trial court properly granted summary judgment to appellee on appellant's quantum meruit and unjust enrichment claims.

## D. Fraud

{¶ 42} Appellant must show each of the following elements for a claim of fraud:

"(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."

*Woods v. Caterpillar, Inc.*, 2005-Ohio-4170, ¶ 10 (6th Dist.), quoting *Mussivand v. David*, 45 Ohio St.3d 314, 322 (1989).

{¶ 43} Under Civ. R. 9(B), appellant must plead in his complaint the circumstances constituting fraud with particularity, where such "circumstances include: 'the time, place and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud.'" *Id.* at ¶ 11, quoting *Aluminum Line*

*Products Co. v. Brad Smith Roofing Co.*, 109 Ohio App.3d 246, 259 (8th Dist. 1996). It is questionable whether appellant's complaint claiming fraud satisfies the particularity requirement because nowhere in appellant's complaint does he state the time and place of appellee's allegedly false representation.

{¶ 44} Rather, outside of his complaint, appellant offers conflicting information between his "Affidavit of Facts," deposition testimony, and discovery responses of when "the agreement" was formed with appellee containing her alleged misrepresentations. One option from his deposition is an "ongoing agreement" from the first time they began cohabitating in 2016, when they commingled their money for their joint needs. Another option from appellant's deposition is during the spring of 2017 before appellee successfully purchased, using her divorce proceeds, the Maumee home individually six months later. Another option from his "Affidavit of facts" is in January 2019 before they moved into the Maumee home two months later. However, most importantly, appellant's complaint is silent on any particular circumstances/dates constituting fraud and fails to comply with Civ.R. 9(B).

{¶ 45} Nevertheless, appellee moved for summary judgment against appellant arguing there was no genuine issue as to any material fact whether appellee is liable to appellant for fraud because, under Civ.R. 56(C), appellee pointed to appellant's deposition and discovery responses. Appellee argued that even by accepting appellant's self-serving testimony and averments in his "Affidavit of Facts" describing appellee's alleged misrepresentations to him about honoring their agreement to transfer one-half

22.

ownership of the Maumee home to appellant and for him to receive the remainder upon appellee's death, appellee fulfilled that promise when the survivorship deed was recorded on September 25, 2019. Appellee argued appellant had no justifiable reliance on any further promises from appellee by pointing to the undisputed fact that appellant voluntarily relinquished his rights to the Maumee home via quitclaim deed on November 22, 2021.

{¶ 46} We find that appellee met her initial burden as the movant for summary judgment on the promissory estoppel claim. The burden then shifted to appellant under Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue of material fact for trial.

{¶ 47} Appellant argued that a genuine issue of material fact remains "whether Appellee intentionally misrepresented to Appellant her intention for him to inherit the home and other assets as articulated and memorialized in the written mirror wills." However, the so-called "written mirror wills" do not exist in the record. As previously discussed, for appellant to rely on the "mirror wills" to effectuate transfers of personal and real property to him under the alleged agreement with, or promises by, appellee's "written mirror will" must exist and be submitted to the probate court. We have no Civ.R. 56(E) evidence of such. Consequently, we find the record does not support appellant's burden under Civ. R. 56, and the trial court properly granted summary judgment to appellee on appellant's fraud claim.

23.

{¶ 48} Upon de novo review, when viewing the evidence most strongly in appellant's favor, reasonable minds can only come to one conclusion, and that is adverse to appellants. We find that there is no genuine issue of material fact that requires a trial on any of appellant's claims and that appellee is entitled to judgment as a matter of law.

{¶ 49} Appellant's sole assignment of error is not well-taken.

### IV. Conclusion

{¶ 50} On consideration whereof, this court finds that there remain no genuine issues of material fact and, after construing all the evidence most strongly in favor of appellants, appellees are entitled to summary judgment as a matter of law. The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.                            _____
                                                        JUDGE

Myron C. Duhart, J.

                                                _____

Charles E. Sulek, P.J.                            JUDGE
CONCUR.

                                                _____
                                                        JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.